SEVENTEENTH DISTRICT PROBATE COURT v GLADWIN
COUNTY BOARD OF COMMISSIONERS

SEVENTEENTH DISTRICT PROBATE COURT v CLARE COUNTY
BOARD OF COMMISSIONERS

Docket Nos. 82332, 82344. Submitted January 9, 1986, at Grand
Rapids. Decided October 20, 1986. Leave to appeal denied, 428
Mich —.

The Seventeenth District Probate Court encompasses Clare
County and Gladwin County and is jointly financed by those
counties. The Seventeenth District Probate Court filed a com-
plaint for declaratory judgment in Gladwin Circuit Court
against the Gladwin County Board of Commissioners, claiming
that the level of funding provided was inadequate for the
proper operation of the court. In particular, it was claimed that
the sums appropriated for the salaries of the employees of the
court were inadequate. The Seventeenth District Probate Court
filed a complaint for mandamus and injunctive relief in Clare
Circuit Court against the Clare County Board of Commission-
ers, making the same claim as in the Gladwin County action.
The two actions were separately heard by Tyrone Gillespie, J.,
who, after hearing conflicting evidence as to the adequacy of
the salaries of the probate court's staff and the effect the salary
levels might have on the operation of the probate court, fixed
the salaries for the various position at amounts which were
greater than the amounts the counties had set but less than
what the probate court had argued would be appropriate. The
counties each appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. A probate court has an inherent power to require the
funds necessary to carry out its statutorily mandated functions.
A probate court may institute suit against the funding unit
where the court and the funding unit are unable to agree on

REFERENCES

Am Jur 2d, Actions §§ 86 *et seq.*

Am Jur 2d, Costs § 78

Am Jur 2d, Evidence § 1080.

Am Jur 2d, Public Officers and Employees §§ 436 et seq., 483.

See the annotations in the Index to Annotations under Attorneys'
Fees; Commencement of Action or Proceeding; Public Moneys.

what constitutes a proper level of funding, including what constitutes reasonable salaries for the court's employees. The court bears the burden of showing that the requested level of funding is necessary for the performance of the court's statutorily mandated duties.

2. The proper measure of whether the funding is adequate is whether the financing is reasonable and necessary.

3. The probate court carried its burden of proof.

4. The trial court's findings of fact were not clearly erroneous.

5. The question of whether it was error for the trial court to rely on the testimony of an expert witness who relied in part on a study which had been made six years prior to trial was not properly preserved for appellate consideration.

6. The questions of whether the probate court waived its right to bring its action or whether it should be equitably estopped from proceeding with its action were not pled below and may not properly be raised for the first time on appeal.

7. A court pursuing its right to adequate funding may employ outside counsel and may recover reasonable attorney fees. The court has the burden of establishing that the attorney fees are reasonable. Since it is unclear whether the trial court passed on the reasonableness of the attorney fees in the Gladwin County case, a remand for that purpose is required.

Affirmed but remanded for determination of attorney fees.

1. Courts — Probate Courts — Appropriations.

A probate court has the authority to set salaries of its employees which, if reasonable and within the appropriations of the local funding unit, must be paid by the unit; where the probate court and the local funding unit are unable to agree on such expenditures, the court may institute suit and shall bear the burden of proving that the appropriation it seeks is necessary to the performance of its statutorily mandated function.

2. Courts — Appropriations — Evidence — Findings of Fact — Appeal.

A court in a suit to require a funding unit to appropriate funds sufficient to allow the court to perform those duties necessary to the performance of its statutorily mandated duty must, by clear and convincing evidence, establish that the funding requested was reasonable and necessary for the court to carry out its assigned functions; findings of fact made by the trial court in such a suit, whether commenced as a mandamus action or one for declaratory relief, will not be set aside on appeal unless clearly erroneous.

3. COURTS — APPROPRIATIONS — ACTIONS — WAIVER.

A court does not waive its right to bring suit to secure adequate appropriations from the funding unit by not instituting a suit for such funding immediately upon there being a dispute between the court and the funding unit over the adequacy of the funding nor does the court have to wait until the operation of the court is actually impaired before suit may be commenced.

4. COURTS — APPROPRIATIONS — ACTIONS — ATTORNEY FEES — BURDEN OF PROOF.

A court which commences a suit to compel the funding unit to provide adequate funding can employ outside counsel and recover reasonable attorney fees incurred in securing the funding for reasonable and necessary costs of the operation of the court; the court bears the burden of proving that the attorney fees are reasonable.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Robert W. White* and *Douglas W. VanEssen*), for plaintiff.

*Smith & Brooker, P.C.* (by *Glenn F. Doyle*), for Gladwin County Board of Commissioners.

*Reid, Reid, Perry, Lasky, Hollander & Chalmers, P.C.* (by *Joseph D. Reid* and *Nan Elizabeth Casey*), for Clare County Board of Commissioners.

Before: R. M. MAHER, P.J., and ALLEN and R. R. LAMB,* JJ.

PER CURIAM. These cases, consolidated for appeal by order of this Court on February 6, 1985,[1] involve review of judgments requiring the boards of commissioners of Clare and Gladwin Counties to implement a salary structure for employees of the

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff's action against the Clare County Board of Commissioners was for mandamus and injunctive relief. Plaintiff's action against the Gladwin County Board of Commissioners was a joint petition for declaratory judgment. By order of the Supreme Court both actions were heard in separate trials by Judge Tyrone Gillespie.

Seventeenth District Probate Court. The Seventeenth District Probate Court encompasses Clare and Gladwin Counties and is jointly financed by these counties on a percentage basis determined by the population ratio of each county. Traditionally this has resulted in a fifty-five percent funding by Clare County and forty-five percent by Gladwin County.

The Seventeenth District Probate Court consists of one probate judge and seven court employees. Each county allocates funds for three positions, i.e., probate register, juvenile register and juvenile probation officer. The seventh position, the director of court services, is funded by the State of Michigan, through a Department of Social Services grant to each county, and by one or the other or both of the counties in this dispute.

For several years prior to 1984, the probate court and the county commissioners of Clare and Gladwin Counties had disagreed over the level of compensation for the seven court employees. The dispute came to a head in 1983 during the preparation and submission of the court budget for 1984. Separate lawsuits in circuit court were filed by the court against the two county boards of commissioners. The suits did not involve the use of an administrative order by the court nor the use of or threat of the contempt power of the court and are described by the parties as a good faith, honest dispute involving the authority of separate branches of government and the separation of powers doctrine. Although *Employees and Judges of the Second Judicial District v Hillsdale Co,* 423 Mich 705; 378 NW2d 744 (1985), had not been decided when these cases were being tried, the parties to this dispute utilized a dispute resolution procedure which was prescient of the dispute reso-

lution portions of administrative order of 1985-6 promulgated in the *Hillsdale Co* case.

These cases present the issue of the use of the inherent power doctrine by a probate court. The relationship between judicial independence and the doctrine of separation of powers, and the concomitant issue of the propriety of an award of attorney fees to a court invoking the inherent power doctrine, will be examined utilizing such guidance as is provided by the Supreme Court in the *Hillsdale Co* case. There is a proper record before this Court for review of these issues.

Because the question of a probate court's authority to order salary increases has not been dispositively resolved in this state and because courts must respect the inherent power and authority of the other coequal branches of government, we find it necessary and helpful to develop extensively the factual background of these lawsuits and the relevant issues so raised and then to apply, to the extent we find it applicable, the *Hillsdale Co* decision to these issues.

We undertake this assignment mindful of the delicate balance of power in each branch of our tripartite form of government and of the dangers of stepping into a "political thicket." *Colgrove v Green,* 328 US 549, 556; 66 S Ct 1198; 90 L Ed 1432 (1946) (opinion of Frankfurter, J.). *Davis v Bandemer,* 478 US —, —; 106 S Ct 2797; 92 L Ed 2d 85 (1986) (concurring opinion of O'Connor, J.).

### FACTS

#### CLARE COUNTY

For several years prior to 1983, the probate court and the county commissioners of Clare

County had disagreed over the level of compensation for the employees of the probate court. In 1978 or 1979 the Michigan Department of Civil Service, at the request of Clare County, conducted a classification and compensation study for Clare County employees. The study compared salaries of employment positions in Clare County with similar jobs in other counties. The report recommended a salary structure for job positions, but the recommendations were not implemented by the county. This study was admitted as an exhibit at trial and was utilized by an expert witness as part of that witness' analysis and recommendations in the trial of this matter.

In 1983, the Seventeenth District Probate judge attempted to explain his requests for increased compensation submitted as part of the court budget. The judge did this by holding an informal budget hearing. He invited county commissioners to the hearing and had employee job descriptions prepared by the employees of the court. These descriptions were available for examination at the hearing. The judge and the court administrator explained the job functions to those attending the hearing and had the employees available for questioning. A transcript was made available to the board of commissioners for use by those commissioners who did not attend the meeting.

Following this meeting, the court administrator attended budget committee meetings held by the board of commissioners. The court submitted three separate compensation requests to the board of commissioners. Each request was in a decreasing amount. As the parties approached the end of the year and implementation of the 1984 budget, it became apparent that, despite the recent efforts of the parties to reach an agreement on the compensation question, an agreement could not be

reached. The probate court began an action for a writ of mandamus and injunctive relief. The court sought an order compelling the Clare County Board of Commissioners to appropriate approximately $13,000 to implement the court's compensation plan, restraining the board from implementing its longevity and insurance plan, declaring the employees to be court employees, requiring the board to pay the judge's state bar dues and committee membership dues, and compelling the board to pay the court's reasonable attorney fees in connection with the litigation.

The Clare County Board of Commissioners filed a counterclaim for declaratory judgment. The board of commissioners asked the circuit court to declare the probate court budget appropriated by the board to be reasonable and sufficient and to declare the budget submitted by the probate court to be unreasonable, arbitrary and not necessary for the maintenance of the probate court. The board of commissioners claimed the employees were county employees and that the board had the exclusive right to set their compensation.

In a further effort by the parties to resolve their differences, the matter was mediated by the Michigan Judges Association and Michigan Counties Association joint council. The issues could not be resolved by mediation.

At the time the trial commenced, the parties were approximately $15,000 apart in their compensation dispute. The issues joined for trial were: (1) Who was the employer of the employees—the county or the court? (2) What is a reasonable and necessary level of compensation for the court's minimum needs? (3) Was the county system of compensation for the employees an irrational and unfair system? (4) Was the court entitled to reasonable attorney fees incurred in the prosecution

of the lawsuit? (5) Who has the authority to set the compensation of the employees?

With respect to the compensation issue, the county's position was that it had implemented an across-the-board wage increase of ten percent for all county positions including the positions involved in this controversy. The county stated that the ten percent was reasonable and that the action of the county in setting the salaries was the sole, nonreviewable function of the county commissioners. The court's position was that the ten percent increase was not reasonable and was not actually a ten percent increase as to all positions. The court also claimed that the county's method of determining compensation did not take into account the training, responsibilities and duties of each position. Exacerbating the dispute was the fact that Gladwin County had not contributed toward compensating the director of court services on a pro-rata basis for the services rendered by the director at a group home utilized by both counties.

At trial each party produced two witnesses. The plaintiff presented a witness who was qualified, without objection by the defendant, as an expert in the field of salary administration. This expert witness took into account a two and one-half hour difference in the work week of the respective courts, and made an adjustment in arriving at his recommendation for the compensation of the employees of each court. Judge Alexander Strange, the probate judge of the Seventeenth Judicial District, testified on behalf of the plaintiff. The defendant presented a witness who was an employee of the Michigan Department of Civil Service and who had been involved in preparing the 1978 Clare County job study. The defendant's other witness was a member of the Clare County Board of Commissioners.

The job responsibilities and duties for the positions in the court were:

Director of Court Services. The director serves as the Clare County juvenile officer, court administrator for both counties and referee for the juvenile court for both counties. He is responsible for the training and supervision of the juvenile probation officers for each county and for the preparation of the budgets and reports for the court. He serves also as the supervisor of the court's group home maintained for neglected, delinquent or abused children who come under the jurisdiction of the court. His responsibility includes the maintenance of the physical facilities at the county group home.

Probate Register. This person is responsible for processing estates of deceased individuals, guardianships and conservatorships. In uncontested estate matters being probated in independent probate this individual has the same responsibility as the judge. This person also has the responsibility for scheduling cases in the probate division and acts as the juvenile register in the juvenile register's absence.

Juvenile Register. This person is responsible for scheduling cases in the juvenile division. The job requires that the person filling it act as a court recorder, which is a position requiring certification by the State of Michigan. The juvenile register is also the deputy probate register and acts in the absence of the probate register.

Juvenile Probation Officer. This position requires a minimum of a bachelor's degree. This requirement is mandated by the State of Michigan through the Department of Social Services. The person occupying this position is on call and on duty twenty-four hours a day, 365 days a year and has the responsibility of removing children from

homes when necessary, transporting children to foster care placement, and supervising foster care children and children who are on probation to the court. This person must also conduct home investigations and guardianship investigations in adoption matters and prepare investigative reports for the court for dispositional hearings.

At the time of trial, each party's position on the compensation question was:

| Position | Court | Clare County |
| --- | --- | --- |
| Juvenile Probation Officer | $19,965 | $13,009 |
| Juvenile Register | $16,478 | $13,009 |
| Probate Register | $16,478 | $13,009 |
| Director of Court Services | $25,162 | $15,738 |

Some analysis of the method of funding these positions is necessary to illustrate the basis and complexity of this funding disagreement. The county is reimbursed approximately twenty-five percent of the salary of the juvenile probation officer. This reimbursement comes to the county from the State of Michigan through the child care fund.

The director of court services position is funded in a much more complex manner. The person occupying this position serves also as the county juvenile officer. The salary proposed by the county for this position would be:

| Amount | Source | Total Compensation |
| --- | --- | --- |
| $12,444 | State of Michigan - County Juvenile Officer | |
| $ 4,200 | State of Michigan - Group Home Grant[2] | |
| $ 3,300 | Clare County | $19,944[3] |

[2] The State of Michigan provides a grant of up to a total of $30,000 to reimburse the counties for monies extended to operate the group home. The group home is utilized by both counties. Each county can receive a maximum of up to $15,000 to reimburse the county for expenditures connected with the operation of the group home.

[3] This total compensation for the Director of Court Services is

The manner of compensating the director of court services best illustrates the fertile ground for dispute and disagreement. The county claims that the director of court services received a ten percent raise. The difficulty begins with the application of the ten percent formula. The county's ten percent was to be applied only to the county's 1983 contribution. The 1983 contribution was approximately $3,000. Hence the ten percent raise being offered by Clare County was $300. In 1983 the director of court services received, along with all other personnel in Clare County, a $500 bonus. This amount was not applied to the base salary. The court's claim was that the claimed ten percent raise when applied to the director of court services resulted in a net reduction of $200.

An additional area of dispute is that on the $4,200 paid from the state grant for the operation of the group service home, there is no deduction for FICA or income tax, and there is not a retirement credit on this amount. The director of court services received his salary from the State of Michigan, from the grant administered through the Department of Social Services for the operation of the group home, and from Clare County.

The compensation package for the employees had over the years resulted in ill will between the county and the court. The court had received both written and verbal protest from its employees on a number of occasions. Since 1974, the probate court had a total of three registers of probate and four juvenile case workers. The court was experiencing morale problems with its employees. The court had for a period of time placated the employees by

greater than the figure proposed by Clare County as its proportionate contribution. This dispute between the counties as to which county was going to contribute what amount to reach the total compensation was not litigated nor decided at trial.

telling them that the financing of the court would soon be taken over by the State of Michigan. However, it became apparent to the court in 1983 that state financing was not to become effective that year as promised; consequently the employees' dissatisfaction continued and increased. The probate judge testified that in his opinion the court functioned efficiently and effectively in 1982 and 1983. He described his staff as dedicated and loyal notwithstanding their dissatisfaction with the compensation package.

The county established through one off its witnesses that there are seventy employment positions in Clare County. Since 1978, twenty-six of these positions had experienced changed personnel. The reasons for the twenty-six changes are not in the record.

The expert witness called by the plaintiff stated that his charge in this matter was to render an opinion as to the reasonable and necessary salaries to compensate the employees of the court. To arrive at his conclusion he reviewed the salary schedules for both Clare and Gladwin Counties, the personnel policies for both counties, the transcript of the hearing held by Judge Strange, the job descriptions and job analysis information from Clare County, and a comparison of salaries paid within the funding unit with the salaries paid by similar organizations for comparable jobs. He took into account the county's ability to pay. The record establishes that Clare County had a $104,000 contingency fund in its 1983 budget that was transferred to the 1984 budget.

The expert testified that it is not rational to pay a probation officer at the same rate as a general clerical employee. However under the county compensation structure, if a newly hired employee for the probate register position or the juvenile proba-

tion officer position became employed in the year 1984, that employee would receive the beginning level compensation of a clerical employee. His opinion was that this system of compensation was irrational and that an irrational system of compensation leads to employee dissatisfaction. He further testified that a relationship exists between dissatisfaction and job performance, productivity and turnover problems.

The expert's conclusion, which was not rebutted by any witness produced by the defendant, was that the minimum level salary as a reasonable and necessary salary for 1984 for each court position was:

| | |
|---|---|
| Juvenile Probation Officer | $17,000 |
| Juvenile Register | $14,200 |
| Probate Register | $15,400 |
| Director of Court Services | $22,000 |

The expert recommended a benefit package for all of the court's employees which was comparable to the benefit package being given to county employees. The expert's opinion was that payment of the judge's bar dues and section memberships, while reasonable, was not a necessary expenditure and therefore should be left to the discretion of the board of commissioners.

In a written opinion and judgment Judge Gillespie resolved the Clare County salary dispute as follows:

| Position | Court | County | Salary Established by Judgment |
|---|---|---|---|
| Juvenile Probation Officer | $19,165 | $13,009 | $17,000 |
| Juvenile Register | 16,478 | 13,009 | 14,200 |
| Probate Register | 16,478 | 13,009 | 15,400 |
| Director of Court Services | 25,162 | 15,738 | 22,000 |

Judge Gillespie also found that the employees

were employees of the probate court (this finding is not being appealed) and awarded attorney fees to the plaintiff.

GLADWIN COUNTY

As in Clare County, the disagreement over the level of compensation for the employees of the probate court had existed for several years prior to 1983. In 1983, Judge Strange attempted to explain his requests to the Gladwin County Board of Commissioners as he had to the Clare County Board of Commissioners. When an agreement could not be reached in Gladwin County, the board of commissioners and the court filed a joint petition for declaratory judgment. In the circuit court action the parties sought answers to the following questions: (1) Which is reasonable and necessary, the salary schedule adopted by the probate court or the salary appropriations adopted by the board? (2) Are the Michigan state bar dues of the probate judge a reasonable and necessary expense which the county is obligated to pay? (3) Are the reasonable fees of the probate court's attorneys, which are charged for prosecution of this controversy, a reasonable and necessary expense which the county is obligated to pay?

The suit between the Gladwin County Board of Commissioners and the Seventeenth District Probate Court was mediated by the Michigan Judges Association and Michigan Counties Association joint council. The issues between Gladwin County and the probate court could not be resolved by mediation.

At the time of the trial in the Gladwin County case, the probate court adopted the recommendations of the expert witness in the Clare County

trial as to the reasonable and necessary salary for the positions in this controversy. The positions involved were the same as those involved in the Clare County dispute. The responsibilities and duties were the same except for the juvenile probation officer in Gladwin County. The juvenile probation officer in Gladwin County discharged most of his responsibilities relating to the group home on nights or weekends. The juvenile probation officer received approximately $2,400 per year for the additional responsibilities connected with the group home.

Gladwin County claimed that an across-the-board five percent increase was awarded to each county employee and that such amount was reasonable. The court's position was that the five percent increase was not reasonable and was not actually a five percent increase as to all positions. The court also claimed that the county's method of determining compensation did not take into account the training, responsibilities and duties of each position. Adding to the disagreement were the claims by the court that the juvenile probation officer position in Gladwin County was funded entirely by the State of Michigan and hence Gladwin County paid nothing toward this position, and that Gladwin County was not contributing toward compensating the director of court services for the services rendered by the director at the group home utilized by both Gladwin and Clare Counties.

At trial the probate court presented the same witness who had testified at the Clare County trial as an expert in the field of salary administration. The parties stipulated to the expert's qualifications. Judge Strange again testified on behalf of the court. The county presented no witnesses.

At the time of trial, the probate court's adoption of the recommendations of the expert placed each

party in the following position on the compensation question:

| Position | Court | Gladwin County |
|---|---|---|
| Juvenile Probation Officer | $17,000 | $13,125 |
| Juvenile Register | $13,186 | $11,812.50 |
| Probate Register | $14,300 | $13,398 |
| Director of Court Services | $22,000 | -0- |

The manner of compensating the court employees in Gladwin County provided the same fertile ground for dispute and disagreement as found in Clare County. The court claimed that the county was reimbursed $16,000 from the state by a grant which was utilized to pay the probation officer's salary. The court also claimed that, since the county contributed nothing toward the director of court services position, the pay increase for that position was zero and that the five percent pay increase to the juvenile probation officer was based only on the portion of the $16,000 grant allocated toward salary rather than the full compensation the officer received, which would include his work in the group home. The county claimed that, when the salary, fringe benefits, hospitalization and travel of the probation officer are considered, the county contributed in excess of $16,000 for the juvenile probation officer's salary.

According to Judge Strange, the compensation package for the court employees had over the years resulted in ill will between the court and Gladwin County. Every current employee had protested the wage rates and the compensation package. The court had difficulty in attracting and retaining competent juvenile probation officers and had on two occasions for a period of three or four months been without a juvenile officer. Since 1974, the court had a total of six people in the juvenile probation officer position in Gladwin County. When it became apparent in 1983 that the financ-

ing of the probate court would not be funded by the State of Michigan, the court could no longer placate its employees by holding out the promise of relief through state funding.

Plaintiff's expert witness was O. William Rye, the same expert called in the Clare County case. His charge was to render an opinion as to the reasonable and necessary salaries to compensate the employees of the court who worked in Gladwin County. His method of comparing jobs and arriving at an appropriate salary was the same that he utilized in the Clare County dispute. Rye testified that an inappropriate compensation system would affect court operations by resulting in employee dissatisfaction which potentially leads to turnover problems. He testified also that morale and turnover problems have an effect on productivity in the court performance. He took into account Gladwin County's ability to pay. The record establishes that Gladwin County had $93,000 in its contingency fund that was transferred to the 1984 budget. The expert's opinion was that he would not wait for turnover in a particular position to be demonstrated before he took action to remedy what might be inadequacies in the salary program. He testified that the job classification utilized by Gladwin County was not rational because it compared court positions with other positions in the county structure which did not have the same educational requirements, duties and responsibilities of the court positions. Rye testified that awarding a percentage increase to employees who are working in a compensation structure which is inappropriate under the principles of compensation administration would only perpetuate the inappropriate relationships.

Rye's conclusion, which was not rebutted by any evidence, was that the minimum level salary as a

reasonable and necessary salary for 1984 for each court position was:

| | |
|---|---|
| Juvenile Probation Officer | $17,000 |
| Juvenile Register | $13,186 |
| Probate Register | $14,300 |
| Director of Court Services | $22,000 |

In a detailed and carefully documented opinion Judge Gillespie implemented the salary structure as determined by the Rye testimony. The court awarded attorney fees to the plaintiff.[4] The Gladwin Board of Commissioners has paid the attorney fees so awarded in the amount of $15,731.23. The court also found that it would be reasonable for the county to pay the judge's state bar dues, but ruled actual payment of the dues was not necessary for the operation of the court.

### ISSUES

The parties frame the statement of questions presented somewhat differently. However, a fair synthesis discloses four issues, hereinafter discussed. Issues I through III are common to both cases. Issue IV pertains only to the Gladwin appeal.

I. *Did the trial court err by holding that plaintiff probate court possessed the inherent power to compel by means of a suit for a writ of mandamus additional appropriations, or is otherwise vested with authority to determine the reasonable and necessary salaries, for probate court employment positions?*

---

[4] Attorney fees for plaintiff's attorneys having been denied as a claim by the Board of Commissioners of Gladwin County, the Court under the authority of MCL 46.72; MSA 5.522, will order the payment of the claim of plaintiff's attorneys as submitted forthwith.

In briefs filed prior to the Supreme Court's December, 1985, decision in *Employees and Judges of the Second Judicial District v Hillsdale Co, supra,* defendants argued that the power and authority to set salary schedules for the probate court is by statute vested with the board of commissioners. According to Clare County that authority rests exclusively with the county board and the probate court is without inherent power to establish salaries. Gladwin County argues that, although in certain circumstances probate courts might have an inherent power to compel funding, the exercise of that inherent power is improper where there is an absence of emergency conditions.

Relying on *Livingston Co v Livingston Circuit Judge,* 393 Mich 265, 274; 225 NW2d 352 (1974), *Wayne Circuit Judges v Wayne Co (On Rehearing),* 386 Mich 1; 190 NW2d 188 (1971), 59 ALR3d 569, and *Stanley v City of Ferndale,* 115 Mich App 703; 321 NW2d 681 (1982), Judge Gillespie held that the probate court had an inherent power to require the funds reasonably necessary to carry out its assigned function:

> In this case, the Clare County commissioners in polite and proper language invite this Court to "butt out" of this dispute. Such an offer is personally attractive, but it does not comport with the law and *Livingston* explains why.
>
> The judiciary has the duty, as well as the right to require the personnel and facilities which are reasonably necessary to carry out its assigned functions.

We agree. Any doubt as to whether all courts within Michigan's "one court of justice" system,

including the probate court[5] possessed an inherent power to compel adequate funding for necessary judicial functions was removed by the *Hillsdale* decision. Both the majority and minority agreed that all courts possessed an inherent power to compel expenditures beyond the sums appropriated by the county board.

> Where the Legislature has by statute granted authority or created a duty, the local funding unit may not refuse to provide adequate funding to fulfill the function.
>
> * * *
>
> We harmonize the principles outlined above and give effect to each by concluding 1) that the court has the authority to set salaries which, if reasonable and "within appropriations," must be approved by the control unit, and 2) that where the parties are unable to agree, the court may institute suit and shall bear the burden of proving that the appropriation it seeks is necessary to the performance of its statutorily mandated function. [423 Mich 721-722.]

All justices agreed that an administrative order to compel the board of commissioners to provide additional funds was an improper method by which to exercise inherent judicial power. No administrative orders were issued in the instant case. However, the justices declined to define the standard by which the use of inherent judicial power is

---

[5] Art 6, § 1 of the Michigan Constitution provides:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, *one probate court,* and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house. [Emphasis supplied.]

to be measured, the majority suggesting several possible standards (423 Mich 724, n 9) and the minority suggesting "a reasonable and necessary standard" (423 Mich 744-745). Accordingly, we find no error as to Issue I.

II. *Were the salary levels implemented by the Clare and Gladwin Boards of Commissioners so inadequate as to unreasonably interfere with the necessary functions of the probate court?*

Having decided in Issue I that a probate court as a constitutional court possessed the inherent power described in the *Hillsdale Co* case, we now turn to the unresolved issue in the *Hillsdale Co* case of when and under what standards the judicial branch of government may compel expenditures beyond those appropriated. We begin our analysis mindful of the exclusive, yet not absolute, domain of the legislative branch over the appropriations of money for governmental functions. We are also mindful of a court's need to function independently and effectively. We also believe and hold that, in a controversy involving coequal branches of government, proof must be established by clear and convincing evidence.

Clare and Gladwin Counties argue that, even if the probate court had the inherent power to establish salary levels, insufficient proofs were presented at trial to show that the funds actually appropriated were so inadequate that they unreasonably interfered with the necessary functions of the court. In support of this argument defendants point to evidence that in 1984, the budget year involved here, Clare County gave a ten percent across-the-board increase to all county employees, including the probate court and that in 1980 court employees received a ten percent increase, in 1981

another ten percent increase, in 1982 a five percent increase and in 1983 a $500 bonus, but no salary increase. Counsel further called attention to the following testimony of Probate Judge Strange upon cross-examination:

> *Q.* Did the court function efficiently in 1983?
> *A.* I would say so.
> *Q.* Effectively.
> *A.* Yes, sir.
> *Q.* In 1982?
> *A.* Yes, sir.
> *Q.* And, it currently functions efficiently and effectively, does it not, your Honor?
> *A.* I believe it does, sir.

Additionally, Gladwin County strongly relies on the statement in Judge Gillespie's opinion that

> [t]he court is aware that Gladwin County employs some excellent people. . . . The dispute has not affected efficiency nor loyalty so far as the court can determine.

In short, both defendants contend that while the Rye survey and proofs may have disclosed that the countywide payscale was unfair and inequitable because it did not sufficiently take into account the expertise demanded for the four positions in question as compared with other county positions not requiring such expertise, plaintiff's proofs failed to demonstrate that the probate court was not functioning satisfactorily or that the authorized level of funding jeopardized the overall operations of the court. We respectfully disagree.

Until a more definitive statement is forthcoming from the Supreme Court as to the standard by which the court's inherent power is to be measured, we adopt the "financing which is reasonable

and necessary" test employed in *Livingston Co, supra,* and suggested as one of "several possible standards" in Justice BOYLE's majority opinion in *Hillsdale.*[6] This is the standard followed by Judge Gillespie in the instant case. Contrary to the assertions made by defendants, plaintiff's proofs, when read as a whole, demonstrate that the sums requested by Judge Strange for the four positions were "reasonable and necessary" for the court to carry out its assigned functions. Judge Strange testified that the juvenile register, the probate register, and the juvenile probation officer had protested to him in writing and also orally on a number of occasions. He stated that the present compensation rates had created a morale problem in the court.

Plaintiff's expert witness, O. William Rye, testified that the current compensation structure, which pays most employees at the same rate regardless of position or responsibilities, is not rational. He testified that such a salary structure over a period of time will create employee dissatisfaction and that employee dissatisfaction will affect employee performance and productivity. Under the Rye analysis and proofs, the Gladwin-Clare compensation schedule was not only "unfair and inequitable," it was totally irrational in the sense that the salaries were not related to responsibilities and duties of the positions. This irrationality was succinctly noted in the summary portion of the trial court's opinion in the Clare County case:

> 4. The Supreme Court has used an industrial model in defining positions and setting of salaries.
>
> The Supreme Court Administrator uses job analysis for each employee. Clare County uses a military model. The military model is that everyone

---

[6] 423 Mich 724.

who carries a rifle is paid the same except for promotions in rank due to experience. Clare County rates everyone who uses a typewriter as a clerk with an extra added for longevity. One example is that the juvenile probation officer who must possess a B.A. degree in psychology or social work and one year on-the-job experience is equated with the juvenile register who needs only a typing course and six months on-the-job experience. The commissioners have not adopted a job study done for them by the Michigan Civil Service Commission which would implement the industrial model.

In both trials defendants stipulated that Rye was qualified to testify as an expert witness and that no testimony contradicting Rye's testimony and salary recommendation was offered by defendants.

In summary on Issue II: Our review in the Gladwin County case is from a declaratory action. Our review in the Clare County case is from a suit for a writ of mandamus and a counterclaim for declaratory relief. The review of a declaratory action is de novo. While the review is de novo, great deference is given to the trial court's findings of fact. In reviewing either type of action, findings of fact made by a trial court shall not be set aside unless clearly erroneous. See GCR 1963, 517.1 and MCR 2.613(C). *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), explained the proper application of the clearly erroneous review standard.

[A]n appellate court will set aside the findings of fact of a trial court sitting without a jury when such findings are clearly erroneous. In construing comparable "clearly erroneous" language in Rule 52(a) of the Federal Rules of Procedure, the United States Supreme Court has stated that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed". . . . Appropriately, the "judicial sieve" with which we have sifted the evidence in this non-jury case is "of finer mesh than the one correspondingly employed on review" of a jury's verdict.

For the reasons described at length above, we are unable to find an abuse of discretion, and we find that plaintiff has satisfied the required burden of proof by clear and convincing evidence.

III. *Did the trial court err by relying on the recommendations of plaintiff's expert witness, who had utilized a salary and compensation study completed six years earlier, and is plaintiff's action barred by waiver and equitable estoppel?*

William Hardwick, an employee of the Michigan Department of Civil Service, testified that in 1978 his office conducted a classification and compensation study for Clare County. Hardwick was the project leader. In that study, Hardwick's office compared salaries of selected jobs in Clare County with similar jobs in other counties. The report recommended a salary structure for county employees, but the study was never implemented by Clare County. Hardwick testified that the 1978 study needed to be updated and that it should not be used in its present form, since conditions have not remained static. Rye testified that he reviewed the 1978 study as part of his analysis.

Defendant Clare County Board of Commissioners now argues that the lower court erred by relying on the recommendations of Rye, who in turn utilized an allegedly invalid 1978 study in reaching his conclusions. The 1978 study was admitted into evidence at the Clare County trial, but was not

transcribed. Defendant did not object to the introduction or use of this study by either Rye or the trial court at any time during the trial. Having failed to raise this issue or argument below, defendant Clare County Board of Commissioners has failed to preserve the issue for review by this Court. Unless there is objection at trial, questions relating to evidentiary issues will not be reviewed on appeal. *City of Warren v Maccabees Mutual Life Ins Co*, 83 Mich App 310, 319; 268 NW2d 390 (1978).

In addition, the 1978 study was just one of the documents utilized by Rye. Rye testified that the financial information in the 1978 study was utilized after he had drawn his recommendations. And finally, Hardwick testified that Rye is an expert in the area of salary, compensation and administration and that he could not think of a better person than Rye to conduct an update of the 1978 salary study. Accordingly, we conclude the introduction and utilization of the 1978 salary study did not constitute reversible error.

Clare County Board of Commissioners also argues that plaintiff's action should be barred by the doctrine of waiver and equitable estoppel, since plaintiff failed to initiate a lawsuit with respect to the prior budget appropriations which plaintiff now claims were inadequate. We reject this argument on two grounds: (1) the defenses of waiver and equitable estoppel were not raised in defendant's answer. A defense not asserted in a responsive pleading is waived. See GCR 1963, 111.3 and 111.7; see also MCR 2.111(F)(3). (2) Plaintiff is not seeking relief for alleged budget deficiencies for years prior to 1984.

A court should not be placed in a position where, if a claim is not made the moment a salary dispute or vacancy occurs, the court is deemed to

have waived any right to litigate the issue; nor can a court be placed in a position that, as long as employees remain at their jobs, any review of the actions taken by the funding unit in a salary dispute is premature or prohibited by the separation of powers doctrine. To accept either premise is to eviscerate the inherent authority doctrine and would require a court either to file a lawsuit every year or to wait until overall court operations are seriously impaired or stopped before any preventive or remedial measures can be undertaken. We reject such interpretation of the constitutional authority of a division of Michigan's one court of justice.

IV. *Did the trial court err by requiring defendant Gladwin County Board to pay plaintiff's attorney fees?*

In ordering the payment of the claim of plaintiffs attorneys as submitted, the trial court relied upon MCL 49.73; MSA 5.826. We find that statute inapplicable since that statute applies only where the judge is a *defendant,* exercising an official act or duty. Here the court is a plaintiff. However, as so clearly stated by Justice RILEY in her opinion in *Hillsdale, supra:*

> [A] court can employ outside counsel and recover reasonable attorney fees in an inherent power controversy. To hold otherwise would impair the inherent powers of the court. [423 Mich 750.]

We further hold, as did Justice RILEY, that plaintiff has the burden of proving that the attorney fees are reasonable, and that an itemized bill of costs is not sufficient on its face to establish rea-

sonable attorney fees. We also hold that any portion of the attorney fees which were necessitated by the presenting of the probate judge's claim for payment of bar dues and section membership should not be paid by the board of commissioners. That portion of the attorney fees was for the personal pecuniary interest of the judge as opposed to litigation necessary to meet the operational needs of the court.

### CONCLUSION

The judgments and orders of the trial court are affirmed. Since it is unclear from the record and file before us whether Judge Gillespie passed on the reasonableness of the attorney fees submitted to Gladwin County, this matter is remanded to the trial court for proceedings consistent with this opinion.

No costs, a question of public importance being involved.