WEAVER, J.
odissenting). I respectfully dissent from the result and reasoning of the lead opinion. I would hold that Judge Dennis C. Kolenda, the trial judge who conducted the six-day hearing in this case and reviewed the 300 exhibits totaling approximately 5,500 pages, did not clearly err in finding that the enhanced pension plan and the retiree health care plan were reasonable *163 and necessary to the 46th Circuit Trial Court’s ability to perform its mandated responsibilities.
I would affirm the judgment of the Court of Appeals in holding that Judge Kolenda did not clearly err in finding that the requested appropriation to fund the enhanced pension plan and the retiree health care plan was reasonable and necessary.
A
This funding dispute between the 46th Circuit Trial Court (Trial Court) and two of the three counties it serves arose out of the consolidation of certain courts in Kalkaska, Crawford, and Otsego counties, pursuant to Administrative Order No. 1996-9, 451 Mich civ.
During the early stages of unification, the Trial Court concluded that all employees doing the same job, regardless of the county in which they physically worked, should earn equal pay and receive equal benefits. After negotiations with Chief Judge Alton Davis of the Trial Court, the employees agreed to phase out longevity pay and dedicate a portion of all future wage increases to fund the retiree benefits package. The court employees also agreed to accept a cost-saving health care insurance plan that offered less coverage and had a higher prescription copay. Chief Judge Davis then secured the agreement of the three counties, Crawford, Kalkaska, and Otsego, to fund an enhanced pension plan and a retiree health care plan.
After Judge Davis entered an order implementing those new plans, Crawford and Kalkaska counties reneged on their agreement and passed resolutions disapproving those plans. Thus, at the time that Judge Davis entered the implementation order that gave the employees their new benefits, he was acting according to *164 the existing approval of the counties. After lengthy negotiations failed, this suit followed.
As a coequal, independent branch of the government, the judiciary has the inherent power “ ‘to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice....’[1] When a court and funding unit cannot reach agreement, the court may initiate suit to compel expenditures in excess of appropriations.[2]
The question before us is whether the enhanced pension plan and the retiree health care plan are reasonable and necessary for the Trial Court to carry out its mandated responsibilities, and its powers and duties to administer justice.[3]
The lead opinion attempts to limit the judiciary’s inherent power to compel funding by adopting the Court of Appeals reasoning in Wayne Co Prosecutor v Wayne Co Bd of Comm’rs,[4] that “[a] serviceable level of funding is the minimum budgetary appropriation at which statutorily mandated functions can be fulfilled,” and that “[a] function funded at a serviceable level will be carried out in a barely adequate manner, but it will be carried out.” But Justice CORRIGAN writes separately to say that “it is simply not necessary in this case to decide whether [to adopt the Wayne Co Prosecutor standard].”[5] An opinion of this Court that does not *165 obtain four signatures is not binding precedent.[6] Consequently, the lead opinion does not change the existing standards used to determine whether a court can use its inherent power to secure funding.
B
This Court reviews the factual findings underlying the trial court’s determination whether a requested appropriation was “reasonable and necessary” for clear error.[7] “An appellate court should not reverse the findings of a trial court in such a case unless its findings are clearly erroneous. ‘A finding is “clearly erroneous” [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.’ ”[8] The fact-finder has not clearly erred “simply because [the appellate court is] convinced that it would have decided the case differently.”[9] If there are two permissible views of the evidence, the fact-finder’s choice between them cannot be clearly erroneous.[10] Further, assessment of credibility lies within the trial court’s province.[11] Under MCR 2.613(C), “regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.”[12]
*166 Although the lead opinion purports to review Judge Kolenda’s factual findings for clear error, it in fact engages in a review de novo. The lead opinion does not give due deference to Judge Kolenda’s ability to assess the credibility of the witnesses before him, and imposes its own inaccurate interpretation of the record to conclude that the enhanced pension plan and the retiree health care plan were not reasonable and necessary.
In his 53-page opinion, Judge Kolenda specifically found that the “Trial Courts witnesses [were] credible and persuasive” and the defendant’s witnesses were “ignorant of many pertinent facts”; Judge Kolenda also found that the defendant’s witnesses’ answers were “shallow,” “evasive,” and “conclusive.” Judge Kolenda stated:
This Court found the Trial Court’s witnesses to be credible and persuasive. They gave testimony which reflected careful and thoughtful assessments of the pertinent facts. Crawford County’s expert was a witness who rationalized a pre-ordained opinion. He was ignorant of many pertinent facts and his assessments were shallow. Furthermore, much of his testimony was evasive, betraying a realization that he could not sustain his conclusions. Crawford County’s controller was not dishonest, but he could not articulate any persuasive bases for the conclusory positions he took. The several county commissioners who testified were not helpful. They testified only to what they have convinced themselves, or have been convinced, happened and was intended.[13]
Judge Kolenda’s candid assessment of the credibility of the witnesses must provide guidance to this Court’s review of his factual findings.
*167 c
Judge Kolenda first found that the enhanced pension plan and the retiree health care plan are necessary. As Justice RILEY stated in her dissent in Hillsdale, supra, “to be reasonable and necessary the need must not only be practical rather than relative, but it must be shown that the funds are needed for the effective administration of justice.”[14] Judge Kolenda’s ultimate finding on the issue of necessity was that
[t]his Court is also convinced that funding the proposed retiree healthcare and upgraded pensions are indispensable to the Trial Court continuing to function at a serviceable level. Without those benefit enhancements, staff morale, which is already low, will plummet, with the result that productivity will suffer badly, soon falling below serviceable levels. In addition, good employees will leave, and competent replacements will not be found. Those prospects establish that the benefits which the Trial Court seeks to fund are indispensable to maintaining a workforce which is itself indispensable to the Trial Court fulfilling its obligations, making those benefits themselves indispensable. The prospect is enough. The Trial Court need not wait for its operations to actually fall below serviceable levels. [Seventeenth Dist Probate Court v] Gladwin County [Bd of Comm’rs, 155 Mich App 433, 449; 401 NW2d 50 (1986)]. [Emphasis added.][15]
Judge Kolenda’s ultimate finding that the enhanced pension plan and the retiree health care plan are necessary was based in part on Judge Kolenda’s factual determination that employees were quitting work while waiting for the new benefit package:
Some employees have left out of dissatisfaction with the delay in finalizing the healthcare fund and pension up *168 grade, but many have stayed in anticipation of getting those benefits. However, if not awarded them, many employees are expected to leave. Moral [sic] will be affected even more; and the judges’ ability to lead the Court will be destroyed. The ultimate effect would, obviously, be a serious loss of productivity![16]
The lead opinion asserts that the proposed benefits are not necessary because the Trial Court has utterly failed to demonstrate the necessity:
[T]he Chief Judge testified that there “probably” would be people who would quit their jobs and that the Trial Court would have trouble finding new employees. However, the Chief Judge’s opinion was utterly unsupported. The Trial Court failed to demonstrate that even one person had either left its employ or was planning to leave its employ as a result of the alleged inadequacy of the preexisting benefits plan![17]
This statement mischaracterizes the record. Rudi Edel, the trial court administrator and magistrate for the 46th Circuit Trial Court, testified that six employees left for wages and benefits:
[W]e had a turnover rate in the court... 36 employees, and by now I think it’s around 46/47 employees. Some of those — three or four or five ... were discharged. Some of those employees left the court as a result of moving out of the area. Some of those employees left the court because they were dissatisfied with wages, benefits. And some of them even with court reform; they were not happy with a shift in their job duties... . Another component is that we wanted to attract employees to our court, and to do that we need to have a good benefit structure![18]
Rudi Edel later quantified the exact number of employees who recently quit because of poor wages and *169 benefits. “Out of the 36 people identified on this list, I can definitely identify that six left for wages and benefits.”[19]
In Gladwin Co[20] the Court of Appeals held that enhanced pay for a position is “reasonable and necessary” for a court to carry out its assigned functions where there was testimony that the court employees had protested the present rate of compensation in writing and orally, that the present rate of compensation had created a morale problem in the court, and the plaintiffs expert witness testified that the current compensation structure was not rational.[21] The lead opinion attempts to distinguish Gladwin Co, stating that
employee morale alone was not the determinative factor in Gladwin Co. As noted by the Court of Appeals, the irrational pay scheme instituted by the funding unit had caused the court to fill the position of juvenile probation officer six times in less than 12 years.[22]
This attempted distinction between the facts of Glad-win Co and the present case fails. In Gladwin Co, the plaintiff went through six juvenile probation officers in less than 12 years. Here, Judge Kolenda noted in his opinion that “[s]ome employees have left out of dissatisfaction with the delay in finalizing the healthcare fund and pension upgrade,”[23] and Rudi Edel testified that “six [employees] left for wages and benefits.”
Benefit packages are necessary when at least six frustrated employees quit work because of poor wages *170 and benefits at a court already staffed at bare bones and just getting by. Here, as in Gladwin Co, something more than morale establishes that the additional funding is necessary. In both cases, six employees had quit their jobs.
The lead opinion also attempts to refute Judge Kolenda’s finding of necessity by stating that there is no evidence that the employees’ productivity has diminished to any extent:
[T]here is no evidence here that the productivity of court employees has diminished to such an extent that the court cannot carry out its constitutional responsibilities or indeed that it has diminished to any extent. Rudi Edel, administrator of the Trial Court, testified that the court was not suffering from any speedy-trial problems either before or after the current funding controversy. [24]
Again, the lead opinion’s conclusion ignores evidence adduced at trial to support Judge Kolenda’s factual findings. Judge Kolenda found that without the benefit enhancements, “productivity will suffer badly, soon falling below serviceable levels.” This was supported by testimony that the Trial Court cannot comply with its statutory and court-ordered requirements at the current staffing level. Rudi Edel stated that the court was not complying with at least one administrative order of this Court, three or four federal statutes, and three or four state statutes:
I found that with our current staffing levels we are complying with all the requirements with very few exceptions. And I would need to see the report to specifically outline those exceptions. I know one is administrative order 1991-4. There is [sic] three or four federal statutes that our Friend of the Court does not comply with; three or *171 four state statues. And these are issues that we just don’t have the manpower to get to.[25]
Furthermore, the testimony of Rudi Edel establishes that the court workers are currently working “110 percent.” He testified that “[i]f nobody goes on vacation and if nobody gets sick with our current staffing level, once we replace the assignment clerk, we’ll get the job done.”[26]
The lead opinion asserts that the enhanced benefits were not reasonable and necessary to address the Trial Court’s failure to comply with its court-imposed and statutory requirements because the “requested appropriation is for retiree benefits and would not result in a single additional person being hired.”[27] Under the lead opinion’s rationale, retiree benefits will never be “necessary.” But retiree benefits are part of a comprehensive compensation package; contrary to the lead opinion’s contention, people do choose jobs on the basis of adequacy or inadequacy of retiree benefits.
The lead opinion also quotes from the testimony of expert witness Ross Childs, the county executive of Grand Traverse County, to support its contention that the Trial Court was “not suffering from any speedy-trial problems ... .”[28] The lead opinion states:
In fact, the Trial Court’s own expert testified that the employees were functioning “within the ranges that are expected to be there by the State.”[29]
But this quote takes Mr. Childs’s testimony out of context. Ross Childs’s statement was made in the *172 context of excess budgets.[30] Mr. Childs actually said that the Trial Court’s budget is “within the ranges that are expected to be there by the State.”[31] Mr. Childs’s full statement was:
I looked at the — the budgets that were prepared. I read some of the documents. I — I looked at it and made an assessment as to whether there was what I thought “fat” in the budget. I didn’t see a lot of fat in the budget. I looked at the caseloads and I went through the State Court Administrator’s Officer and looked at the reports that were there, the assignments and the staff and the caseload per staff for caseworkers in the Friend of the Court and probation officers and so on were consistent; that they are well in — within the ranges that are expected to be there by the State. I didn’t find the fat in the budget.[32]
Mr. Childs’s statement had nothing to do with the ability of the employees to perform their jobs. The statement was in the context of “fat” within the Trial Court’s budget. The lead opinion’s statement that the “Trial Court’s own expert testified that the employees were functioning ‘within the ranges that are expected to be there by the State’ ” is a mischaracterization.
To summarize, evidence presented at trial demonstrates that the friend of the court cannot meet all of its duties mandated by court administrative order and state and federal statutes. Furthermore, the rest of the court’s work can only be performed if the employees work at “110 percent” and no one goes on vacation or gets sick. As previously stated, clear error exists only when the appellate court ‘ “is left with the definite and firm conviction that a mistake has been made.’ ”[33] The *173 lead opinion has not provided a factual basis to justify its “definite and firm conviction that a mistake has been made” because there is evidence on the record to support Judge Kolenda’s factual finding that the Trial Court cannot comply with its statutory requirements because of its shortage of manpower.
Finally, the lead opinion asserts that the Trial Court created the morale problem:
[A]ny claimed morale problems that did exist among the Trial Court’s employees seem predicated upon the Chief Judge’s own unilateral promise to provide the enhanced benefits. To this extent, the Trial Court is seeking to require the counties to pay for a problem that it has arguably created.[34]
The lead opinion misstates the facts. Judge Davis did not make a unilateral promise to provide enhanced benefits, nor did he create the morale problem.
Judge Kolenda specifically found that on December 4, 2000, Chief Judge Davis “issued an implementation order which recited that ‘[e]ach of the Funding Units has passed resolutions accepting the benefit shifts which are governed by this order.’ ”[35] One week later, the Kalkaska board rescinded its approval of the retiree health care fund and the pension upgrade; then on February 1, 2001, the Crawford board also rescinded its acceptance of the health care fund for retirees.[36]
Thus, at the time that Judge Davis entered the implementation order that gave the employees their new benefits, he was acting according to the existing approval of the counties. The morale problem was *174 created when the counties reconsidered their decision to adopt the retiree health care and pension benefits.
There was testimony offered to establish that Judge Davis did not make a unilateral promise of benefits. Linda Franklin, the probate register in Crawford County, explained how Judge Davis informed the employees of the proposed benefit package. She describes the process as a “proposed” exchange of “certain substantial benefits” for “better benefits.” At no time did Linda Franklin state that the enhanced benefits were “promised” to her or the other employees:
Judge Davis called a staff meeting for the court employees in all three counties, I believe in the summer of 2000. At that meeting he explained to the employees what he was going to propose as far as standardizing and increasing the benefits for the three county court employees.
In return he requested that we give up certain substantial benefits that we had as a contribution to obtaining those better benefits for all of us.
He asked us to give up our longevity payments. He asked us to give up a certain percentage of our wage increases over a three-year period. And he asked us to accept a different health plan that would gave a higher co-pay for prescription drugs and doctor visits, I believe.
The Court’s employees, I believe, were excited and we wanted to do what we could to try to obtain these better benefits, and so we all assented at that meeting that we would be willing to give up those substantial benefits if he were able to increase our benefits to these higher levels.[37]
This evidence refutes the lead opinion’s theory that Chief Judge Davis created the morale problem by making a unilateral promise to provide enhanced benefits.
*175 D
Judge Kolenda found that the benefits are reasonable because they were modest, not excessive, the product of sound judgment, and available to other employees in the counties.[38]
First, Judge Kolenda found the retiree health care benefit was reasonable because it was “capped at a modest annual sum,” stating:
The counties are not being asked to provide healthcare benefits to court employees. That could be expensive, although, given the need for healthcare coverage, what fair compensation might require, but the counties are being asked only to make modest, defined annual contributions to a fund from which the Court will buy whatever benefits can be acquired with the assets in that fund. The counties have no exposure beyond the annual contribution, which, even as it escalates, is capped at a modest annual sum.[39]
Second, Judge Kolenda found that the amount requested for the benefits package was “reasonable” because the benefits were not excessive, and the product of sound judgment, stating:
In sum, a proposed appropriation is reasonable, even though considerably more than what a funding unit is willing to provide, if it is not excessive, e.g., is comparable to what other courts spend on like activities; if it is within the funding unit’s ability to pay; and if it reflects sound judgment, e.g., is the product of careful analysis and thought. The budget which the Trial Court proposes in these cases meets those tests. Therefore, that court is entitled to have that budget fully funded.[40]
*176 Third, Judge Kolenda determined that the pension plan is reasonable because it is available to some other employees in Crawford and Kalkaska counties, as well as some employees in nearby counties.[41]
Finally, Judge Kolenda found that the enhanced pension was “not excessive” even though it is the “top of the line” pension available through the state pension system. The lead opinion disagrees with this finding, and contends that the benefits are not reasonable and necessary because the requested appropriation is the “maximum” necessary to improve employee morale, asserting:
Also, the Chief Judge admitted at trial that he specifically asked for “the best [pension] plan that’s available.” Trial transcript at 342. In other words, the requested appropriation, by its own terms, comprises the maximum necessary to improve employee morale, not what was “reasonable and necessary” to ensure that its employees could carry out the Trial Court’s constitutional responsibilities.[42]
The statement that the requested appropriation is the “maximum necessary to improve employee morale” is taken out of context. At trial, Judge Davis testified:
[U]nder the [old benefit package], you offer to pay a pension benefit to somebody that either is not sufficient or is barely sufficient to pay... [for] the group health care plan once they retire.
So 20 years of service, [and] out the door they go.. .. [Their health care costs] just [eat] up every nickel of [their pension]. And what are you living on? Social Security or your savings or maybe you get another job.[43]
*177 With this pension deficit in mind, Judge Davis made the following statements regarding the “maximum” pension:
So the time has come ... to recognize that these people have done what’s been asked of them and I feel for a variety of reasons that we have... two glaring deficits in our overall structure.
Number one, we have not a good pension circumstance with the MERS [Municipal Employees’ Retirement System] pensions that are afforded to ... court people. Plus they are different county to county and I want unification. ... [T]hat’s our goal. And so what I want from you is the best MERS plan that’s available ...
The second thing that is a glaring problem ... is there’s no provision for these people when they leave work for any kind of healthcare. They’re just on their own.... It’s a problem in attracting people. It is a double-edged sword in that respect: In all the time I’ve been involved in county government, I’ve seen circumstances where people ... who should go because they are tired, they’re worn out, they’re sick ...; [but] they don’t go because this is the only place they can get their medical benefits.... So I want some kind of medical retirement plan for these people.[44]
Judge Davis was' asserting that the “maximum” pension is reasonable because the larger pension keeps the retirees from having to dip into their life savings or take a second job to pay for their living expenses.
The lead opinion would establish as a rule of law that the “maximum” benefit out of those available to a court could never be considered reasonable and necessary. But Judge Kolenda found that the “maximum” pension was both necessary and reasonable under these specific circumstances, stating:
The proposed pension upgrade is also not excessive. That it is the “top of the line” pension available through *178 MERS does not mean that it is extravagant. First of all, being more generous than other pensions does not mean extravagant. It simply means more than something which is less....
Further buttressing the conclusion that the B-4 pension is not excessive is the fact that it is part of the benefit package which the Trial Court must provide in order to retain its employees and compete for qualified replacements. What is needed to he competitive cannot possibly be deemed excessive, even if somewhat generous.[45]
Under In re Miller,[46] clear error exists only when the appellate court “ ‘is left with the definite and firm conviction that a mistake has been made.’ ” Review of the record does not show that Judge Kolenda clearly erred in finding that the enhanced pension plan and the retiree health care plan are reasonable.
CONCLUSION
As Judge Kolenda noted, the evidence in this case consists of six days of hearings, 14 witness testimonials, and 5,500 pages of exhibits. Judge Kolenda “read and carefully considered” all of the evidence before he held that the employee benefits were both reasonable and necessary. The lead opinion has failed to justify its “definite and firm conviction that a mistake has been made.” Without the facts necessary to establish a “definite and firm conviction,” the judgments of Judge Kolenda and the Court of Appeals should be upheld. *179 The fact-finder has not clearly erred simply because the appellate court is convinced that it would have decided the case differently.[47]
Cavanagh and Kelly, JJ., concurred with Weaver, J.

 Wayne Circuit Judges v Wayne Co (On Rehearing), 386 Mich 1, 9; 190 NW2d 228 (1971) (citation omitted).

 Employees & Judge of the Second Judicial Dist Court v Hillsdale Co, 423 Mich 705, 716; 378 NW2d 744 (1985).

 Wayne Circuit Judges v Wayne Co (On Rehearing), supra at 9.

 Wayne Co Prosecutor v Wayne Co Bd of Comm’rs, 93 Mich App 114, 124; 286 NW2d 62 (1979) (emphasis added).

 Ante at 162.

 People v Jackson, 390 Mich 621, 627; 212 NW2d 918 (1973).

 Herald Co, Inc v Eastern Michigan Univ Bd of Regents, 475 Mich 463; 719 NW2d 19 (2006). Morris v Clawson Tank Co, 459 Mich 256; 587 NW2d 253 (1998).

 In re Miller, 433 Mich 331, 337; 445 NW2d 161 (1989) (citation omitted).

 Anderson v Bessemer City, 470 US 564, 573; 105 S Ct 1504; 84 L Bd 2d 518 (1985).

 Id. at 574.

 Id.

 Morris, supra at 275.

13 Unpublished opinion of the Trial Court for the 46th Judicial Circuit, issued July 25, 2003 (Docket Nos. 02-05951-CZ and 02-10014-CZ), p 4 n 4 (hereafter Trial Court opinion).

 Hillsdale, supra at 744 (Riley, J., dissenting).

15 Trial Court opinion, supra at 45.

16 Id. at 18.

17 Ante at 150 (emphasis in original).

18 Bench trial volume I, p 132.

 Bench trial volume I, p 283.

 Seventeenth Dist Probate Court v Gladwin Co Bd of Comm’rs, 155 Mich App 433; 401 NW2d 50 (1986).

 Id. at 455.

22 Ante at 151 (emphasis omitted).

 Trial Court opinion, supra at 18.

24 Ante at 152 (emphasis added).

25 Bench trial volume I, p 284.

 Bench trial volume I, p 121.

 Ante at 152 n 11 (emphasis in original).

 Ante at 152.

29 Ante at 153.

 Bench trial volume II, p 485.

 Id.

32 Bench trial volume II, pp 484-485 (emphasis added).

 In re Miller, supra at 337 (citation omitted).

34 Ante at 154.

 Trial Court opinion, supra at 16.

 Id. at 17.

37 Bench trial volume II, pp 533-534 (emphasis added).

 The majority does not address whether the benefits were reasonable. Ante at 155 n 15.

39 Trial Court opinion, supra at 48.

40 Id. at 47.

 Id.

42 Ante at 154 (emphasis in original).

43 Bench trial volume II, p 346.

44 Id. at 342-343.

45 Trial Court opinion, supra at 48. As stated above, Judge Kolenda also found that the benefits are reasonable because they were modest, not excessive, the product of sound judgment, and available to other employees in the counties.

 In re Miller, supra at 337 (citation omitted).

 Anderson, supra at 573.