## 46TH CIRCUIT TRIAL COURT v CRAWFORD COUNTY

Docket Nos. 254179, 254180, 254181, 254182, 256129, 257234. Submitted February 15, 2005, at Grand Rapids. Decided May 3, 2005, at 9:05 a.m. Leave to appeal sought.

The 46th Circuit Trial Court (the Trial Court) brought an action in the Crawford Circuit Court against Crawford County, Kalkaska County, and the Crawford County Board of Commissioners (the Counties), seeking adequate funding with which to perform its constitutional obligations. The Trial Court was composed of all the courts in Crawford County, Kalkaska County, and Otsego County, which counties were the funding units for the Trial Court. The Counties filed defenses, including fraud defenses, and a counter-complaint seeking a declaratory judgment that the Trial Court exceeded its authority by implementing certain retiree benefits plans. Otsego County had not disputed the Trial Court's budget requests.

Crawford County and Kalkaska County filed a suit in the Otsego Circuit Court against Otsego County, alleging fraud and a violation of the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq.*, related to Otsego County's participation in the retiree benefits plans.

The cases were consolidated before a visiting judge assigned by the State Court Administrative Office (SCAO). The court, Dennis C. Kolenda, J., ruled that the Counties were responsible for the attorney fees and litigation expenses of the Trial Court and entered an order allocating the liability for those fees and costs equally among the three counties. In an interlocutory appeal, the Court of Appeals, SAWYER, P.J., and BANDSTRA and SMOLENSKI, JJ., determined that a court has the inherent power and duty to take such action as is reasonable and necessary to fulfill its constitutional obligations, including the power to determine and compel payment of adequate funds from the funding units, to employ outside counsel to litigate those interests, and to recover reasonable attorney fees and costs, plus interest, for its litigation of those inherent powers. The Court of Appeals remanded the case for further proceedings. 231 Mich App 477 (2004). On remand, Judge Kolenda found in favor of the Trial Court, found that the Counties

had filed frivolous pleadings and sanctioned them and their counsel, determined that Otsego County should not participate in the costs of the Trial Court's litigation, and limited the Trial Court's counsel's hourly rate for the purpose of awarding attorney fees. The Counties and their counsel appealed, and the appeals were consolidated.

The Court of Appeals *held*:

1. The lower court correctly determined that the Crawford County Board of Commissioners approved the benefits package and formed a valid contract with the Trial Court for its implementation. The facts that the annual payment cap was misstated and the erroneous amount was included in the resolution are not relevant to the creation of the contract because the annual payment cap was not an essential term. Also, the Crawford board knew of the error before approving the benefits package and could not have relied on the misstatement. A county board speaks only through its official minutes and resolutions and, in this case, the resolutions demonstrated that the intent of the Crawford board was clear in approving the plan.

2. That the appropriate officers of Crawford County did not sign a subsequent written contract does not vitiate the existence of a contract. After the resolution of acceptance, the formal written document was not required as evidence of the agreement.

3. The Counties erroneously argued that they could unilaterally modify or vacate the contract by subsequent resolutions rescinding prior approval. One party may not unilaterally modify or vacate a contract.

4. The contract, which was for a term of years lasting longer than the normal term of office for the board, was, nonetheless a valid contract to implement the benefits package.

5. The lower court correctly determined that the Trial Court had the inherent power to file suit seeking adequate funding from the Counties. Courts have the powers to determine and compel payment of funds that are reasonable and necessary to carry out constitutionally mandated responsibilities regarding the administration of justice. The lower court correctly determined that the Trial Court had reduced its staff and costs to the point at which further cuts in funding would result in the Trial Court being unable to function at a serviceable level.

6. The responsibility of funding the courts continues even when the funding units (the Counties, in this case) are having budget problems. Unless the funding units demonstrate that the

requested funds are necessary to fund other obligations having the same rank and priority, the courts must be funded at the reasonable and necessary levels.

7. Because the contract claims were part and parcel of the litigation concerning the Trial Court's inherent power to seek adequate funding, the Trial Court was entitled to recover the attorney fees in litigating all its claims. However, the recovery of fees is limited in gross and by hourly amount.

8. The Counties claimed that the panel of this Court that heard the interlocutory appeal erred. This Court is bound by the earlier published opinion. The law of the case doctrine also prevents review of that opinion.

9. Otsego County sought relief from its apportioned liability for attorney fees. Because Otsego County was brought into this litigation with clean hands inasmuch as it had continually funded the Trial Court at the requested level, it was entitled to equitable relief. The lower court correctly reallocated the Trial Court's attorney fees and costs to the Counties and eliminated Otsego's liability for them.

10. Otsego County failed to present its claim for indemnification to the clerks of the Counties pursuant to MCL 46.11. Nonetheless, it would have been futile to do so because the Counties continually fought the payment of the Trial Court's attorney fees. There is no obligation to pursue form where such pursuit is futile.

11. The Counties were not entitled to evidentiary hearings regarding the reasonableness of the Trial Court's requested attorney fees for two reasons. First, the Counties forfeited the right by failing to request such hearings. Second, the parties presented a sufficient record from which the lower court could determine whether counsel's hourly rates and the hours expended on the litigation were reasonable.

12. The Counties object to the use of a letter protected by the attorney-client privilege. The privilege is personal and may be waived only by the client. Although inadvertently disclosed, the Counties' failure to object over a prolonged time evinced a voluntary and intentional waiver of the privilege. Granting relief on appeal after the extended acquiescence to the use of the letter throughout this litigation is not appropriate. The lower court properly considered the letter.

13. The Counties object to the lower court raising the issue of standing with regard to the Counties' claims against Otsego County under the UBAA. Standing may be raised at any time

under MCR 2.116(C)(8). The lower court correctly determined that the statute provides that only the Attorney General or a prosecuting attorney may institute a civil action for violation of the act and correctly dismissed the claim against Otsego County.

14. Sanctions under MCR 2.114(D) for the filing of frivolous claims and defenses apply to the Counties and their counsel and were properly awarded by the lower court. An evidentiary hearing regarding the reasonableness of the fees imposed as sanctions was not required in light of the sufficient record from which reasonableness could be determined.

15. The Counties contend on appeal that the SCAO appointed a judge who was not disinterested in the outcome of the case. The Counties waived consideration of that issue by their failure to bring a motion for Judge Kolenda's disqualification in the lower court. That failure is fatal to the claim.

16. That the Trial Court ceased to exist on August 1, 2004, does not render this litigation moot. Its successor intends to function and is functioning as a unified trial court system. The contention that the entire litigation must be dismissed is frivolous.

Affirmed.

ZAHRA, P.J., concurring in part and dissenting in part, stated that he dissents only from part II in the majority opinion, which considers contract claims, and part VII of the majority opinion, which considers the imposition of sanctions.

The Counties were under a preexisting duty to appropriate reasonably sufficient funds necessary for the Trial Court to carry out its constitutionally mandated duties. A promise to fund the Trial Court in the presence of a statutory duty to fund cannot provide adequate consideration to support a contract. Because courts have the authority and responsibility for their own personnel matters, any contract regarding the salaries or benefits of court employees should be between the court and its employees. The funding unit must appropriate sufficient funds to satisfy a contract between the court and its employees. If the budget reflecting the contract will exceed the total appropriation, the funding unit may file suit to test the reasonableness and necessity of the provisions contained in the agreement. The contract claims lack legal merit.

Pursuant to MCL 600.2591 and MCR 2.625, upon finding a claim to be frivolous, the court must award the prevailing party costs and attorney fees. However, under the inherent powers of a court, it is entitled to have its reasonable attorney fees and costs

paid. The award of sanctions for frivolous claims and defenses in this case effectively duplicates the payment of fees and costs. Generally, only compensatory damages, not punitive damages, are available in Michigan. Compensatory damages are for making an injured party whole. The injured party may not make a profit. A double recovery of costs and attorney fees would not serve the purpose of the Constitution, the statutes, or the court rules and it would ultimately punish taxpayers and result in the Trial Court recovering money that is not necessary for its functioning.

1. COURTS — INHERENT POWERS — POWER TO SEEK — ADEQUATE FUNDING.

A court has the inherent power to file suit seeking adequate funding from its funding units; it has the powers to determine and compel payment of funds that are reasonable and necessary to carry out its constitutionally mandated responsibilities regarding the administration of justice.

2. COURTS — FUNDING UNITS — FUNDING — REASONABLE AND NECESSARY LEVELS.

Unless a court's funding unit demonstrates that the funds requested by the court for operations are necessary to fund other obligations having the same rank and priority, the court must be funded at the reasonable and necessary levels.

3. COURTS — INHERENT POWERS — POWER TO SEEK ADEQUATE FUNDING — ATTORNEY FEES.

A court has the inherent power to seek attorney fees incurred in litigating a claim for adequate funding by its funding unit; an award of attorney fees pursuant to this power is in addition to any award of costs and attorney fees as sanctions for the filing of frivolous claims or defenses (MCR 2.114[E]).

*Kienbaum Opperwall Hardy & Pelton, P.L.C.* (by *Thomas G. Kienbaum, Noel D. Massie,* and *Patricia J. Boyle,* of counsel) for the 46th Circuit Trial Court.

*Allan Falk, P.C.* (by *Allan Falk*), and *Cohl, Stoker, Toskey & McGlinchey, P.C.* (by *Bonnie G. Toskey*), for Crawford County, Kalkaska County, and the Crawford County Board of Commissioners.

*Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.* (by *Christopher J. Johnson* and *Marcelyn A. Stepanski*), for Otsego County.

Before: ZAHRA, P.J., and NEFF and COOPER, JJ.

COOPER, J. Kalkaska County, Crawford County, and the Crawford County Board of Commissioners (the Counties) appeal as of right in these consolidated appeals from various orders and the judgment entered by Judge Dennis Kolenda (the lower court) in the litigation pursued by the 46th Circuit Trial Court (the Trial Court) seeking adequate funding. The Counties also appeal from various orders entered in the related suit filed by the Counties against Otsego County, the control unit for the Trial Court. We affirm.

I. FACTS AND PROCEDURAL BACKGROUND

These consolidated cases arise out of a funding dispute between the Trial Court and two of its funding units—the Counties. A detailed narrative of much of the history of this case is provided in *46th Circuit Trial Court v Crawford Co*,[1] an opinion issued by this Court following an interlocutory appeal. In that appeal, this Court affirmed the lower court's award of attorney fees to the Trial Court based on the Trial Court's inherent power to seek adequate funding. While that appeal was pending, however, this case proceeded in the lower court.

The 46th Circuit Trial Court was created by order of the Michigan Supreme Court as an experiment in consolidating the various levels of trial courts into one, unified trial court system.[2] The 46th Circuit Trial Court

---

[1] *46th Circuit Trial Court v Crawford Co*, 261 Mich App 477; 682 NW2d 519 (2004), lv held in abeyance 687 NW2d 297 (2004) (pending the resolution of these consolidated appeals).

[2] As will be discussed in further detail later, the "demonstration project" status of the Trial Court ended in 2004; however, the Trial Court continues to function as a unified court system.

was the only multi-county experimental court created
and included Otsego, Crawford, and Kalkaska counties.
During the early stages of unification, the Trial Court
concluded that all employees, regardless of the county
in which they physically worked, should earn equal pay
and receive equal benefits. Wages needed to be redeter-
mined, as many positions had been eradicated and
others had taken on consolidated functions. Conse-
quently, in the summer of 2000, Chief Judge Alton
Davis asked the employees to make cost-saving conces-
sions to serve as a bargaining chip in securing the
funding units' approval of a retiree healthcare plan and
an improved pension plan. The employees agreed to
phase out longevity pay and dedicate a portion of all
future wage increases to fund the retiree benefits
package. Employees also agreed to accept a cost-saving
health care insurance plan that offered less coverage
and had a higher prescription co-pay. Following the
funding units' passage of resolutions approving these
plans, the Trial Court implemented the employee con-
cessions at substantial savings to the Trial Court and its
funding units.

During the August 29, 2000 meeting, at which the
Crawford County Board of Commissioners passed reso-
lutions approving the plans, the commissioners voiced
their concerns about becoming financially responsible
for potential future unfunded liability and over the low
figure represented as the annual retiree payment cap.[3]
Judge Davis promised to put a "failsafe" provision in
writing to outline the method of handling any unfunded
liabilities. Despite these concerns, the Board passed the
following resolutions at the conclusion of the meeting:

[3] Judge Davis told the Board that each retiree would be entitled to
$4,087 per year; however, the Board was aware that the correct figure
was over $1,000 more.

> MOTION by Hanson, seconded by Beardslee, to authorize the County [to] pay 24% of $50,000 ($12,000) for the year 2000 and that payment will increase at 4% per year until 2017, and at that time will pay an estimated $94,649 and that the Blue Cross/Blue Shield medical supplement payment per individual would be capped at [sic] the year 2000 at $4,087.00 [and] would increase at 4% per year until 2017 for an employee to be eligible for $7,654.00 per year.

> MOTION by Wieland, seconded by Hanson, to request the [Trial] Court [to] not implement the MERS B-4 upgrade at this time, but recognize the change in the 2001/2002 budget cycle.

Later that day, Judge Davis learned that the correct figure for the annual retiree payment was over $5,000, and immediately informed the Crawford County Board of Commissioners of his error.[4]

Following this meeting, the Trial Court created a comprehensive contract outlining the retiree benefits package to serve as an informative guide for the Trial Court and its employees. The contract also included the promised memorialization of the "failsafe" provision. Kalkaska and Otsego counties immediately signed the contract, but Crawford County refused. The Crawford County Board of Commissioners consulted with its auditor and labor counsel after approving the retiree benefits package and was advised that its approval was unwise. Crawford County was in the middle of a budget crisis and had been forced to cut many county services. As a result, the Board claimed that it had not approved the pension plan and was induced to approve the retiree healthcare plan by the Trial Court's misrepresentation of cost. This led to Crawford County's refusal in FY 2001, 2002, and 2003 to appropriate the full amount of their 24% of the Trial Court's requested operating

---

[4] This incorrect figure was never presented to Kalkaska County.

budget.[5] Although Kalkaska County initially approved
of the retiree benefits package and fully funded the
Trial Court, it soon followed suit by rescinding its
earlier resolutions and cutting appropriations.

Following lengthy negotiations with its funding units,
the Trial Court filed suit against the Counties, seeking
the enforcement of the contract to implement the retiree
benefits package and adequate funding based on the
constitutional theory of inherent powers. The Counties
filed a counterclaim for declaratory judgment regarding
their duty to fund the Trial Court and defended against
the contract claims based on fraud. Otsego County was
brought into the litigation by the Counties, which also
filed a separate suit against it. The Counties asserted
that Otsego County, as the Trial Court's control unit, had
violated the Uniform Budgeting and Accounting Act
(UBAA)[6] by disbursing funds to the Trial Court in
excess of appropriations. The Counties also raised a
fraud claim against Otsego County. The Counties' fraud
defense and all claims against Otsego County were
dismissed before a trial on the merits began. Following
a six-day trial in the summer of 2003, the lower court
ruled in favor of the Trial Court on both its contract and
constitutional theories in pursuit of funding.[7]

## II. CONTRACT CLAIMS

The lower court determined that the resolutions
passed by the funding units created an explicit contract

---

[5] Crawford County only fully funded the Trial Court in FY 2004, in
exchange for the Trial Court's voluntarily dismissal of an additional
funding claim for that year. Crawford County has fully funded the Trial
Court in FY 2005.

[6] MCL 141.421 *et seq.*

[7] Further facts necessary to this appeal will be discussed throughout
this opinion where appropriate.

with the Trial Court to implement the retiree benefits package. Even if the parties had not formed a contract, the lower court determined that one could be implied. On appeal, the Counties contend that the lower court improperly interpreted the Crawford Board's resolution regarding the retiree healthcare plan as a valid acceptance, rather than a counteroffer. The Counties also contend that the Crawford Board's resolution regarding the pension plan was not an approval of the plan, but showed the Board's intent to table all discussion until the following year. We disagree.

The lower court correctly determined that Crawford County approved the retiree benefits package and formed a valid contract with the Trial Court for its implementation. Issues of contract interpretation are questions of law that we review de novo.[8] Issues regarding the formation of a valid contract are all questions of fact,[9] which we review for clear error.[10] The interpretation of a county resolution, like the interpretation of a statute, is a question of law, which we review de novo.[11]

We reject the Counties' contention that the resolutions passed by the Crawford County Board of Commissioners did not amount to a valid acceptance of an offer to implement the retiree benefits package. " 'Decisions regarding the legitimacy of an offer and acceptance

---

[8] *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004).

[9] See *In re Costs & Attorney Fees*, 250 Mich App 89, 97; 645 NW2d 697 (2002) (*Costs I*) (regarding whether a legitimate offer has been made and accepted forming a valid contract); *Haji v Prevention Ins Agency, Inc*, 196 Mich App 84, 87-88; 492 NW2d 460 (1992) (regarding whether a promise was consideration for a contract).

[10] MCR 2.613(C); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

[11] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

revolve around the particular facts pertaining to a specific transaction . . . .' "[12] " '[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, . . . through voluntarily undertaking some unequivocal act sufficient for that purpose.' "[13] The acceptance must be unambiguous and strictly conform to the essential terms of the offer.[14] The Trial Court correctly asserts that the essential term of the offer to implement the retiree healthcare plan is the required annual appropriation, which would be 24% of $50,000 for Crawford County. The Crawford County Board of Commissioners clearly agreed to this term in the resolution. The annual payment cap was not an essential term. The change in amount did not affect the overall appropriation of the funding units. Therefore, this error was not a material deviation from an essential term and Crawford County's resolution was a valid acceptance.

Furthermore, the initial error in the representation of this figure did not negate the mutual assent of the parties. Fraud in the inducement is a defense to the formation of a contract. However, the claimant must prove that it actually relied upon a material misrepresentation.[15] The alleged "misrepresentation" was not material. Additionally, as will be discussed in great

[12] *Costs I, supra* at 97, quoting *Patrick v US Tangible Investment Corp*, 234 Mich App 541, 549; 595 NW2d 162 (1999).

[13] *Id.*, quoting *Kraus v Gerrish Twp*, 205 Mich App 25, 45; 517 NW2d 756 (1994).

[14] *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997); *Giannetti v Cornillie*, 204 Mich App 234, 237; 514 NW2d 221 (1994), rev'd on other grounds 447 Mich 998 (1994) (only a material departure from the terms of the offer invalidates an acceptance).

[15] *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

detail later, the lower court properly dismissed the Counties' fraud defense before trial due to a lack of actual reliance.

We also disagree with the Counties' contention that the second Crawford County resolution did not approve of the pension plan. The only evidence supporting the Counties' claim is a series of affidavits by the individual commissioners stating their actual intent in passing the resolution. A county board speaks only through its official minutes and resolutions and their import may not be altered or supplemented by parol evidence regarding the intention of the individual members.[16] The clear language of the second resolution shows the Board's intent to approve of the plan, but delay its implementation until the following cycle.

We also reject the Counties' contention that Crawford County's failure to sign the written contract outlining the retiree benefits package vitiated the existence of a contract. The official minutes and resolutions of the August 29, 2000 meeting memorialize the agreement of the parties. They officially voted to approve the retiree benefits package and the Trial Court relied on those resolutions to the detriment of its employees. While Judge Davis created a formal written contract regarding the retiree benefits package, Crawford County's signature on this extraneous writing was not required as evidence of the agreement.[17]

---

[16] *Tavener v Elk Rapids Rural Agricultural School Dist,* 341 Mich 244, 251; 67 NW2d 136 (1954), quoting *Stevenson v Bay City,* 26 Mich 44, 45 (1872).

[17] We reject the dissent's assertion that the contract between the Counties and the Trial Court to implement the retiree benefits package lacked consideration as counties have a preexisting statutory duty to fund the courts. The Trial Court's employees supplied the consideration for this contract by giving up rights to which they were otherwise entitled in order to secure the Counties' agreement to the benefits package.

The Counties also argue that any continued duty to perform under the contract ended when they passed resolutions rescinding their prior approval of the retiree benefits package. However, a party to a contract may not unilaterally modify or waive a contract.[18] Finally, we reject the Counties' contention that the contract was invalid because its term exceeded the term of the current Board. There are many administrative functions that must be handled on a day-to-day basis that may require contracts lasting longer than the normal term of office.[19] If a successor board had the power to repudiate these types of contracts at will, a government entity's ability to do business would be compromised.[20] Accordingly, the lower court properly determined that the Trial Court had formed a valid contract with its funding units to implement the retiree benefits package.

### III. RIGHT TO SEEK ADEQUATE FUNDING BASED ON INHERENT POWERS

The lower court also determined that the Trial Court had the inherent power to file suit seeking adequate

---

[18] *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372-373; 666 NW2d 251 (2003); *H J Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 564-565; 595 NW2d 176 (1999).

[19] See *Harbor Land Co v Grosse Ile Twp*, 22 Mich App 192; 177 NW2d 176 (1970) (finding that a township board had the power to enter into a long-term contract for the construction and operation of a waste treatment plant).

[20] As we affirm the lower court's determination that an express contract existed to implement the retiree benefits package, we need not reach the lower court's alternate determination that an implied contract existed. However, we note that, if necessary, a contract could be implied under the circumstances to prevent the Counties' unjust enrichment as the Trial Court's employee concessions had already been implemented. See *Martin v East Lansing School Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992).

funding from the Counties. Whether the Trial Court has the inherent power to compel the Counties to fund its retiree benefits package is a constitutional question, which we review de novo.[21] In discussing a court's inherent power to seek adequate funding, this Court reasoned as follows in the previous appeal:

> The principles the lower court relied on in this regard have been accepted in Michigan for at least the last thirty-five years. In *Wayne Circuit Judges v Wayne Co*, 383 Mich 10, 33; 172 NW2d 436 (1969) (*Wayne I*), Justice BLACK, with Justice DETHMERS concurring, noted the "unanimous" authority that a court charged with the responsibility for judicial service "receives and accepts with that responsibility the inherent power and duty to take such action as is reasonably necessary to fulfil the constitutional obligation thus undertaken." On rehearing two years later, the Supreme Court adopted the BLACK-DETHMERS opinion as the opinion of the Court, noting that it had been "authenticated" by decisions handed down by the supreme courts of Missouri and Pennsylvania:

> "In view of the developing strength of the principle of inherent power and duty of the judiciary, called into play as it was by the opinion of Justices DETHMERS and BLACK aforesaid, this Court is constrained on rehearing to adopt that opinion; adding only that the judiciary . . . *must* stand foursquare in support of the constitutional doctrines which, most recently in the [*Commonwealth, ex rel Carroll v Tate*, 442 Pa 45; 274 A2d 193 (1971)] case, were declared. 'Must' we have accented, just as the *Tate* Court stressed 'must possess' in this terse and pointed summary of constitutional necessity . . . :

> " 'Expressed in other words, the Judiciary must possess the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government. This

---

[21] *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

principle has long been recognized not only in this Commonwealth but also throughout our Nation.' " [*Wayne Circuit Judges v Wayne Co*, 386 Mich 1, 8-9; 190 NW2d 228(1971) (*Wayne II* ), quoting *Tate, supra* at 52.]

A more recent and oft-cited discussion of the inherent power doctrine is found in *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co*, 423 Mich 705; 378 NW2d 744 (1985) [*Hillsdale*]. The opinion of the majority agreed with the dissenting justices that "an inherent power analysis is implicated when judicial functions are in jeopardy" and reiterated that the "Court has stood 'foursquare' in support of the constitutional doctrine of inherent power" while concluding that the doctrine was not implicated under the facts of the case at hand. *Id.* at 724.

In a dissent concurred in by two other justices, Justice RILEY noted that, " 'irrespective of specific grant by constitution or legislation,' " the inherent power doctrine supplies " 'authority to incur and order paid all such expenses as are reasonably necessary for the holding of court and the administration of the duties of courts of justice.' " *Id.* at 734 (RILEY, J., dissenting), quoting 20 Am Jur 2d, Courts, § 78, p 440, and 59 ALR3d, § 2, p 574. Justice RILEY explained that

"[t]his inherent authority of the court is nonajudicatory. It does not deal with justiciable matters. It only relates to the administration of the business of the court.

"One aspect of the administration of district and circuit courts is the determination of the operational needs of the court and the establishment of a budget to provide for these needs." [*Hillsdale, supra* at 734-735.]

It is clear from these and other precedents, see, e.g., *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 299-300; 586 NW2d 894 (1998); *Livingston Co v Livingston Circuit Judge*, 393 Mich 265, 273; 225 NW2d 352 (1975); *Ottawa Co Controller v Ottawa Probate Judge*, 156 Mich App 594, 602-603; 401 NW2d 869 (1986); [*17th Dist Probate Ct v Gladwin Co Bd of Comm'rs*, 155 Mich App 433, 451-452; 401 NW2d 50 (1986) (*Gladwin*)], that a court has

inherent power to take whatever steps are reasonably necessary to fulfill the judicial function.[22]

In taking those steps reasonably necessary to fulfill the judicial function, a court must remember that " 'each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.' "[23] A court has the inherent power to seek "financing that is reasonable and necessary."[24] When a court files suit seeking adequate funding, it must show that the funding unit has failed to appropriate funds to allow the court to function "servicably as a co-equal branch of Michigan's government . . . ."[25] This Court defined "serviceability" as follows:

> Serviceability must be defined in the context of Justice BLACK's opinion, *i.e.* "urgent", "extreme", "critical", and "vital" needs. A serviceable level of funding is the minimum budgetary appropriation at which statutorily mandated functions can be fulfilled. A serviceable level is not met when the failure to fund eliminates the function or creates an emergency immediately threatening the existence of the function. A serviceable level is not the optimal level. A function funded at a serviceable level will be carried out in a barely adequate manner, but it will be carried out. A function funded below a serviceable level, however, will not be fulfilled as required by statute.[26]

---

[22] *46th Circuit Trial Court, supra* at 488-490.

[23] *Hillsdale, supra* at 717; quoting *United States v Will*, 449 US 200, 228; 101 S Ct 471; 66 L Ed 2d 392 (1980).

[24] *Gladwin, supra* at 454-455, citing *Livingston, supra*, and *Hillsdale, supra*.

[25] *Wayne Circuit Judges v Wayne Co*, 383 Mich 10, 33; 172 NW2d 436 (1969) (*Wayne I*) (opinion by BLACK, J.).

[26] *Wayne Co Prosecutor v Wayne Co Bd of Comm'rs*, 93 Mich App 114, 124; 286 NW2d 62 (1979). See also *Wayne Co Sheriff v Wayne Co Bd of Comm'rs*, 148 Mich App 702, 708; 385 NW2d 267 (1983).

The lower court's determination that the Trial Court's requested budget, specifically the requested appropriation for the retiree benefits package, was reasonable and necessary represents a factual finding that we review for clear error.[27] The lower court found that the Trial Court had reduced its staff to the "bare bones" and would be unable to function at a serviceable level if required to make more cuts. The lower court further found that funding the requested benefits was indispensable to serviceability. Many employees had taken on extra duties and all employees had accepted concessions to their detriment. Continuing to operate without the bargained-for retirement benefits package would cause morale to plummet and competent employees to take alternate employment, leading to a decrease in productivity. These findings were based on the record evidence and were not clearly erroneous.

The Counties' contention that the Trial Court's budget request was excessive and unreasonable in light of the state of the Counties' budgets is without merit. Although the Counties assert that they were financially unable to fund the Trial Court at the requested level, they have not demonstrated that the requested funds were necessary to fund other "obligations having the same rank and priority . . . ."[28] Second, the Trial Court presented evidence that certain employees in each of the funding units received identical pension benefits.[29] Third, the Trial Court was not required to select a

---

[27] MCR 2.613(C); *Alan Custom Homes, supra* at 512. See also *Gladwin, supra* at 456-457.

[28] *Wayne Co Prosecutor, supra* at 128, quoting *Wayne Circuit Judges v Wayne Co*, 15 Mich App 713, 728-729; 167 NW2d 337 (1969), rev'd in part on other grounds *Wayne I, supra.*

[29] See Administrative Order No. 1998-5, § II. 459 Mich clxxvi-clxxvii (1998). See also *Livingston, supra* at 288 (dissent by LEVIN, J.) ("In determining the amounts to be appropriated for judicial needs, a board of

retiree benefits package consistent with that provided
by any of the three funding units. Administrative Order
No. 1998-5 provides that a court with multiple funding
units may implement "a single, uniform personnel
policy that does not wholly conform with specific per-
sonnel polices of any of the court's funding units."[30]
Finally, we note that the lower court's factual determi-
nation that the retiree benefits package was a reason-
able and necessary expense to the continued service-
ability of the Trial Court is consistent with
longstanding precedent finding similar court expenses
to be within reason.[31] Accordingly, the lower court did
not commit clear error by determining that the re-
quested appropriation to fund the retiree benefits pack-
age was reasonable and necessary to the continued
serviceability of the Trial Court.

### IV. AWARD OF ATTORNEY FEES TO THE TRIAL COURT BASED ON INHERENT POWERS

#### A. ENTITLEMENT TO ATTORNEY FEES

Early in the litigation, the lower court determined
that the Trial Court was entitled to recover its attorney
fees expended in seeking adequate funding. The fund-
ing units were each required to provide one-third of
these fees. As a court has the inherent power to seek

---

commissioners necessarily considers other county needs and the wage
levels of other employees paid with county funds.").

[30] Administrative Order No. 1998-5, § VI. 459 Mich clxxxi.

[31] See *Branch Co Bd of Comm'rs v Service Employees Int'l Union, Local
586*, 168 Mich App 340, 349; 423 NW2d 658 (1988); *Ottawa Co Controller,
supra* (finding that a court has the power to set expenses, such as
employee wages, within the funding unit's overall appropriations to the
court). See also *Cameron v Monroe Co Probate Court*, 457 Mich 423,
427-428; 579 NW2d 859 (1998) (finding that "the supervision and
administration of court personnel is a necessary expense of justice for
which the county is expected to pay").

adequate funding, it must also have the inherent power to seek attorney fees in order to bring such litigation. These attorney fees are based on the constitutional power of a court, not a party's success on the merits. Furthermore, as the policy of this state is to assess interest on awards of attorney fees and costs, the lower court properly determined to assess interest at the statutory rate. The Trial Court was entitled to the fees incurred in litigating all its claims, as the contract claims were part and parcel of the inherent powers funding litigation. The lower court also determined that the Trial Court was entitled to attorney fees under MCL 49.73, which requires a county to secure and fund outside counsel for a county official, including a judge, who is named as a defendant, based on the Counties' counterclaims.

The Counties filed an interlocutory appeal of the lower court's order. In the prior published opinion, this Court affirmed the lower court's order. However, this Court found that MCL 49.73 was inapplicable under the circumstances as the Trial Court had instituted this action.[32] Furthermore, this Court determined that the amount of attorney fees that a court may recover in funding litigation must be limited. Therefore, a court may only recover attorney fees at an hourly rate that was 150% of that charged by its funding unit's counsel, and only 150% of the total fees expended by the funding unit.[33]

The Counties continue to challenge the lower court's order and now contend that the previous published opinion of this Court was erroneous as well. Even if we were to agree with the Counties' challenges, we would

---

[32] *46th Circuit Trial Court, supra* at 486-488.

[33] *Id.* at 499-501.

be unable to provide any relief. We are bound by the previous published opinion of this Court.[34] We are further bound by the law of the case doctrine.

> The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case.[35]

Accordingly, we decline to review the Counties' claimed errors.

### B. RELIEVING OTSEGO COUNTY OF ITS DUTY TO PAY THE TRIAL COURT'S ATTORNEY FEES

The Counties also challenge the lower court's order relieving Otsego County of its responsibility to fund the Trial Court's attorney fees and reapportioning its duty among the other two counties. Although Otsego County sought to be indemnified by the Counties for its share of the attorney fees, the lower court instead determined that it was entitled to relief based on equitable principles. In doing so, the lower court rejected the Counties' attempt to reapportion the fees according to the Trial Court funding formula, under which Otsego County was responsible for the lion's share of the budget.

---

[34] MCR 7.215(C)(2); *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004). The fact that the Counties appealed this decision to the Michigan Supreme Court, which held the application in abeyance pending the resolution of these consolidated appeals, has no effect on the prior opinion's precedential value. MCR 7.215(C)(2); *Johnson v White*, 261 Mich App 332, 347; 682 NW2d 505 (2004).

[35] *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001), citing *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997).

We review a lower court's decisions in equity de novo and all underlying findings of fact for clear error.[36] "Jurisdiction of the courts of equity is recognized where 'the facts involved in litigation are such that a claimed legal remedy, although available, will not afford adequate relief.' "[37] Otsego County's indemnification claim sounded in tort as it was based on the Counties' "wrongdoing" in failing to fund the Trial Court and instigating this litigation. As the underlying suit is constitutional in nature, such indemnification would be precluded, denying Otsego County adequate relief. Otsego County was brought into this litigation with "clean hands"—it had continually funded the Trial Court at the requested level. Accordingly, it was entitled to the equitable relief granted by the lower court.[38]

Additionally, the lower court properly found that the Counties were not immune from Otsego County's motion to be relieved from its duty to pay the Trial Court's attorney fees. As noted previously, the Trial Court's right to collect attorney fees arose from its constitutional inherent powers. Those powers may not be abridged or restricted by statute, by allowing another governmental unit to be immune while violating that constitutional power.[39]

The Counties also challenged the propriety of the lower court's order as Otsego County failed to present

[36] *Eller v Metro Industrial Contracting, Inc*, 261 Mich App 569, 571; 683 NW2d 242 (2004).

[37] *Mooahesh v Dep't of Treasury*, 195 Mich App 551, 561; 492 NW2d 246 (1992), quoting *Wild v Wild*, 360 Mich 270, 276-277; 103 NW2d 607 (1960).

[38] *Rose v Nat'l Auction Group*, 466 Mich 453, 462-463; 646 NW2d 455 (2002).

[39] *Persichini v William Beaumont Hosp*, 238 Mich App 626, 638-639; 607 NW2d 100 (1999). See also *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987) (opinion of BRICKLEY J.), aff'd sub nom *Will v Michigan State Police*, 491 US 58 (1989).

the claim to the Counties' clerks pursuant to MCL
46.11(m). Although the lower court determined that the
statute only requires the presentment of claims based
on private wrongs, nothing in the plain language of the
statute supports that theory. However, it would have
been futile for Otsego County to present its claim for
relief to the Counties as the Counties continually fought
the payment of the Trial Court's attorney fees and were
seeking the reapportionment of those fees in their
favor.[40]

### C. DETERMINING THE REASONABLENESS OF THE TRIAL COURT'S ATTORNEY FEES WITHOUT AN EVIDENTIARY HEARING

In the previous appeal, the Counties challenged the
lower court's determination regarding the reasonable-
ness of the Trial Court's requested attorney fees. This
Court determined that the Counties forfeited the right
to an evidentiary hearing by failing to request one. This
Court also determined that the Counties would not be
entitled to a hearing, even if one had been requested,
because the parties presented a sufficient record from
which the lower court could determine the reasonable-
ness of counsel's hourly rates and the hours expended
on the litigation.[41]

As the litigation continued, the lower court granted
the Trial Court's continuing requests for attorney fees
without evidentiary hearings, although requested by
the Counties. We review a lower court's determination
regarding the necessity of an evidentiary hearing re-
garding the reasonableness of requested attorney fees

---

[40] See *Manor House Apartments v City of Warren*, 204 Mich App 603,
606; 516 NW2d 530 (1994); *Miller Bros v Dep't of Natural Resources*, 203
Mich App 674, 681; 513 NW2d 217 (1994) (finding that a party need not
take futile actions).

[41] *46th Circuit Trial Court, supra* at 502-504.

for an abuse of discretion.[42] As the Trial Court continually presented evidence of the same nature and quality, the lower court properly determined with each request that the record was sufficient for a review without an evidentiary hearing.

V. FRAUD AND INNOCENT MISREPRESENTATION

In defense of the Trial Court's contract claims, the Counties asserted that Crawford County was induced to approve of the retiree healthcare plan, as Judge Davis misrepresented the actual costs of the plan. Specifically, the Counties claimed that Judge Davis represented that the annual payment per retiree would be over $1,000 less than the actual cost. The Counties also asserted that they were induced to approve of the pension plan upgrade without adequate cost information as the Trial Court and Otsego County misrepresented that they did not possess actuarial valuations regarding this plan.

All of these claims were dismissed prior to trial, as they lacked factual support. A letter written by Crawford County Controller, Paul Compo, to the Counties' counsel, Mr. Cohl, on December 17, 2001, became public during discovery. In this letter, Mr. Compo admitted that the Crawford County Board of Commissioners was aware of the correct annual payment figure before passing the resolution approving the plan and included the incorrect figure in the resolution to cause a reaction.[43] Based on this letter, the lower court dismissed

---

[42] *Id.* at 502.

[43] The letter states in relevant part:

    [Implementation Order 2000-11] states that each of the funding units had passed resolutions approving the shift in benefits. This is not entirely true. Crawford had passed a motion to approve

the Counties' fraud defense against the Trial Court and imposed sanctions upon the Counties and their counsel for filing a frivolous defense. The lower court also dismissed the Counties' claim that the Trial Court misrepresented actuarial valuations regarding the pension upgrade. The Counties learned by records received through a Freedom of Information Act request before this litigation commenced that the Trial Court did not possess any relevant actuarial valuations. None of the valuations analyzed the proposed pension plan and each contained a disclaimer that it was inapplicable to other levels of benefits. The lower court declined to sanction the Counties for raising the defense on this ground.

Before trial, the Counties voluntarily dismissed their fraud claim against Otsego County. In 2001, Otsego County passed a resolution approving the pension plan. This resolution indicated that the approval was based on an actuarial valuation prepared in January of 2001. During discovery, Otsego County admitted that it never possessed the cited valuation and based its resolution approving of the pension plan on form language provided by the Michigan Employees' Retirement System. The lower court sanctioned the Counties and their counsel for raising this claim as the Counties could not allege that they relied on a resolution and actuarial valuation

---

the caps in retirement health care insurance, knowing the numbers were wrong as a way to "call the [Trial] Court's bluff."

* * *

The [Trial] Court also included a copy of the minutes for the Special Board Meeting of August 29th, 2000. During this meeting the Board agreed to fund the retirement health care as proposed for 17 years. They did not agree to the terms and conditions outlined in the proposed contract. They agreed to this because they believed the information provided on this issue by the [Trial Court] was erroneous and would cause the [Trial] Court to react.

dated *after* their own resolutions approving the pension plan.

The Counties now challenge the lower court's dismissal of their fraud claims against the Trial Court pursuant to MCR 2.116(C)(10).[44] We review a lower court's determination regarding a motion for summary disposition de novo.[45] A motion under MCR 2.116(C)(10) tests the factual support of a party's claim.[46] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in the light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[47] Summary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[48]

> The elements of fraudulent misrepresentation are (1) the [declarant] made a material misrepresentation, (2) the representation was false, (3) when making the representation, the [declarant] knew or should have known it was false, (4) the [declarant] made the representation with the intention that the [induced party] would act upon it, and (5) the [induced party] acted upon it and suffered damages as a result. A claim of innocent misrepresentation is shown if a party to a contract detrimentally relies on a false representation in such a manner that the injury suffered

---

[44] The lower court actually granted the Trial Court's motion to strike the Counties' fraud defense. However, the lower court based its decision on the lack of factual support for the claims. Accordingly, we will review the lower court's decision as a motion for summary disposition pursuant to MCR 2.116(C)(10).

[45] *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

[46] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 396-397; 605 NW2d 685 (1999).

[47] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

[48] *MacDonald, supra* at 332.

by that party inures to the benefit of the party who made the representation.[49]

The letter from Mr. Compo clearly indicates that the Board knew of the error and purposely included the figure in its resolution. Furthermore, several commissioners admitted at their depositions that they knew of the error or believed the figure was incorrect. Accordingly, the lower court properly dismissed this defense. Furthermore, as the Trial Court actually did not possess any relevant actuarial valuations to disclose to the Counties, the lower court properly dismissed that defense as well.

However, the Counties also challenge the use of Mr. Compo's letter by the opposing parties and the lower court. The Counties assert that the letter was protected by the attorney-client privilege and, therefore, any injustice caused as a result of its use must be remedied. The Trial Court and Otsego County do not dispute that the letter would be protected by the attorney-client privilege;[50] however, they assert that the Counties waived their right to assert that privilege. Whether a party has waived the attorney-client privilege is a question of law, which we review de novo.[51]

The Trial Court and Otsego County first relied upon the letter during Mr. Compo's deposition. The Counties objected to its use at that time; however, neither party could determine how the letter was disclosed. Although the Counties contend that opposing counsel received

---

[49] *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 688; 599 NW2d 546 (1999).

[50] As neither party disputes that the letter would be protected by the privilege, we will assume for purposes of this appeal that the privilege applies.

[51] *Leibel v Gen Motors Corp*, 250 Mich App 229, 240; 646 NW2d 179 (2002).

this letter by improper means, the Counties concede for purposes of this appeal that the letter was disclosed to the opposing parties inadvertently during discovery. Following Mr. Compo's deposition, the Trial Court and Otsego County continually relied on the letter in seeking the dismissal of the Counties' fraud claims and in seeking sanctions for these frivolous claims. However, the Counties failed to reassert their objection to the use of the letter based on the attorney-client privilege until five months after the last fraud claim had been dismissed and three months after the lower court had entered its final judgment on the merits. The attorney-client privilege is personal and may only be waived by the client.[52] The client's waiver of that privilege cannot be predicated upon an inadvertent disclosure; it must be " 'an intentional, voluntary act and cannot rise by implication.' "[53] While the inadvertent disclosure of the letter did not waive the Counties' right to assert the privilege, the Counties' failure to object over a *prolonged* period of time is a voluntary and intentional act evincing the Counties' waiver of that privilege. Granting the Counties relief now, after their extended acquiescence to the use of the letter throughout this litigation, would result in a waste of judicial time and resources. Accordingly, we affirm all actions taken as a result of the use of this letter.

### VI. STANDING UNDER THE UBAA

Prior to trial, the lower court sua sponte questioned the Counties' standing to raise claims against Otsego

---

[52] *Paschke v Retool Industries*, 445 Mich 502, 518 n 15; 519 NW2d 441 (1994), quoting *Passmore v Passmore Estate*, 50 Mich 626, 627; 16 NW 170 (1883); *Leibel, supra* at 240.

[53] *Sterling v Keidan*, 162 Mich App 88, 91; 412 NW2d 255 (1987), quoting *Kelly v Allegan Circuit Judge,* 382 Mich 425, 427; 169 NW2d 916 (1969).

County based on the UBAA. After giving the parties an opportunity to brief the issue, which the Counties neglected to do, the lower court found that the UBAA clearly provides that only the Attorney General or a prosecuting attorney has standing to institute a civil action for a violation of the act.[54] Therefore, the lower court dismissed the Counties' claims to the extent they were based on the UBAA.[55] The lower court also sanctioned the Counties' counsel for filing these claims when the lack of standing was self-evident.

Whether a party has standing is a question of law that we review de novo.[56] Generally, to have standing, "a party must have a legally protected interest that is in jeopardy of being adversely affected."[57] A party raising a claim must have " ' "some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." ' "[58] However, the Counties' claims are governed by statute. This Court has already held that, according to the plain language of that statute, the only parties with standing to bring an action under the UBAA are the Attorney General and prosecuting attorney.[59] Accordingly, the lower court properly dismissed the Counties' claims against Otsego County for lack of standing.

We also reject the Counties' contention that the lower court should not have raised the issue of stand-

---

[54] MCL 141.440.

[55] The Counties voluntarily dismissed these claims in their entirety on the first day of trial when they could find no other grounds upon which to base their claims.

[56] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 612; 684 NW2d 800 (2004).

[57] *In re Foster*, 226 Mich App 348, 358; 573 NW2d 324 (1997).

[58] *Id.*, quoting *Bowie v Arder*, 441 Mich 23; 42-43; 490 NW2d 568 (1992), quoting 59 Am Jur 2d, Parties, § 30, p 414.

[59] *Rayford v Detroit*, 132 Mich App 248; 347 NW2d 210 (1984).

ing. The Counties contend that the Trial Court waived
its right to raise this defense by failing to include the
defense as a motion for summary disposition under
MCR 2.116(C)(5) in its first responsive pleading pursu-
ant to MCR 2.116(D)(2). However, this Court has deter-
mined that a standing defense need not be raised under
MCR 2.116(C)(5); it could also be raised under MCR
2.116(C)(8), which can be raised at any time.[60] Further-
more, we see no need to prohibit a lower court from
considering an issue of its own accord, especially where
that consideration will prevent further error for our
review.[61]

### VII. SANCTIONS FOR FRIVOLOUS CLAIMS AND DEFENSES

The Counties and their counsel challenge the impo-
sition of sanctions for filing a frivolous fraud defense
against the Trial Court and for filing a frivolous fraud
claim and claims predicated upon the UBAA against
Otsego County. We review a lower court's determina-
tion that a claim or defense is frivolous for clear error. A
determination is clearly erroneous when, although
there is sufficient evidence to support it, we are left
with a definite and firm conviction that a mistake has
been made.[62] Pursuant to MCR 2.114(D), an attorney or
party that signs a pleading certifies that "to the best of
his or her knowledge, information, and belief formed
after reasonable inquiry, the document is well grounded
in fact and is warranted by existing law or a good-faith

---

[60] See *Kaiser v Schreiber*, 258 Mich App 357, 369-371; 670 NW2d 697
(2003) (opinion by SAWYER, J.), rev'd on other grounds 469 Mich 944
(2003). See also MCR 2.116(D)(3).

[61] See *LME v ARS*, 261 Mich App 273, 287; 680 NW2d 902 (2004);
*Paschke v Retool Industries (On Rehearing)*, 198 Mich App 702, 705; 499
NW2d 453 (1993), rev'd on other grounds 445 Mich 502 (1994).

[62] *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002); *In
re Attorney Fees & Costs*, 233 Mich App 694, 701; 593 NW2d 589 (1999).

argument for the extension, modification, or reversal of existing law[.]"[63] Sanctions may be imposed on the attorney, client, or both for a violation of this rule. These sanctions "may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including reasonable attorney fees."[64] A party raising a frivolous claim or defense is also subject to costs pursuant to MCR 2.625(A)(2) and MCL 600.2591[65] as follows:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by asserting the costs and fees against the nonprevailing party and their attorney.
>
> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.
>
> (3) As used in this section:
>
> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> * * *
>
> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (iii) The party's legal position was devoid of arguable legal merit.[66]

---

[63] MCR 2.114(D)(2).

[64] MCR 2.114(E).

[65] MCR 2.625(A)(2) directs that costs may be charged pursuant to the statute.

[66] MCL 600.2591.

As noted previously, the lower court properly determined that Crawford County had actual knowledge that the annual payment cap represented by Judge Davis was incorrect at the time the resolution was passed. Their counsel learned of this fact one year before the lawsuit was initiated. Accordingly, the lower court properly determined that the Counties' fraud defense against the Trial Court was frivolous at the time it was filed and, therefore, imposed sanctions against both the Counties and their counsel.[67]

Also as noted above, it is clear from the plain language of the UBAA and binding precedent of this Court that the only parties with standing to raise a claim under that statute are the Attorney General and prosecuting attorney. This authority was available long before counsel filed these claims in this litigation. As these were statutory claims, counsel could have no argument that standing was conferred on any other ground. Accordingly, the lower court also properly imposed sanctions against counsel for filing the UBAA claims against Otsego County.

The Counties and their counsel also challenge the lower court's imposition of sanctions without first holding an evidentiary hearing. As noted above, the Trial Court presented a sufficient record from which the lower court could determine the reasonableness of its fees without an evidentiary hearing. Otsego County

---

[67] The dissent argues that these sanctions are duplicative as the Counties were already required to pay the Trial Court's attorney fees and costs and, therefore, were unnecessarily punitive and a waste of taxpayer dollars. However, neither the court rule nor the statute makes a distinction between attorneys for private, versus public, clients. A careful review of the record in this case would indicate that both the proceedings before the lower court and this Court were entirely frivolous. These sanctions are designed to reimburse counsel for excess work necessitated by such meritless claims and were properly imposed.

presented an identically sufficient record, including detailed billing statements and affidavits of counsel.[68] Therefore, no evidentiary hearing was required to determine the reasonableness of the fees imposed as sanctions. However, the Counties also challenge the lower court's determinations regarding the percentage of counsel's time used in defending the claims for which sanctions were imposed. Judge Kolenda presided over the entire proceeding and was aware of the amount of time spent litigating the issues in court. Furthermore, he equitably divided the fees among each claim raised in the lawsuits. Under the circumstances, this formula was a reasonable approximation of the time actually expended and we find no abuse of discretion.[69]

### VIII. DISINTERESTED JUDGE

The Counties contend that the State Court Administrative Office improperly assigned an interested judge in violation of Administrative Order No. 1998-5. The order requires the assignment of a disinterested judge to hear a case involving a funding dispute between a court and its funding unit. The Counties failed to move for Judge Kolenda's disqualification in the lower court. Whatever their articulated reason for failing to do so, it is fatal to their claim. Accordingly, the Counties waived appellate review of their challenge to the judicial assignment by failing to raise an objection below.[70]

### IX. MOTION FOR GUIDANCE

Shortly before we were scheduled to hear oral argument in this case, the Counties filed a motion for

---

[68] The Counties do not contest the reasonableness of the hourly rates of Otsego County's counsel.

[69] See *Costs I, supra* at 104-106.

[70] See MCR 2.003(C)(1), (3).

guidance asserting that the Trial Court ceased to exist on August 1, 2004, with the passage of Administrative Order No. 2004-2.[71] With that order, the Michigan Supreme Court ended the demonstration project status of the 46th Circuit Trial Court. The Supreme Court also adopted the concurrent jurisdiction plan proposed by the Trial Court. However, a review of the concurrent jurisdiction plan clearly reveals that the Trial Court intends to continue to function as a unified trial court system. Accordingly, we reject the Counties' frivolous contention that the entire litigation must be dismissed.

Affirmed.

NEFF, J., concurred.

ZAHRA, P.J. (*concurring in part and dissenting in part*). I concur with the results reached in parts III, IV, V, VI, VIII, and IX of the majority opinion. I respectfully dissent from parts II (addressing contract claims) and VII (addressing the imposition of sanctions) of the majority opinion. In short, I disagree with the majority's conclusion that a valid contract existed between the Counties and the Trial Court. The Counties were under a preexisting duty to appropriate reasonable funds necessary for the Trial Court to carry out its constitutionally mandated duties. Thus, the promise to fund the Trial Court cannot constitute adequate consideration to support a contract. I further conclude that the imposition of sanctions on the Counties served no purpose except to punish the Counties. The sanctions mandated under MCL 600.2591 and MCR 2.625(A)(2) are intended only to compensate litigants for attorney fees and costs expended in answering frivolous claims and defenses. These sanctions should not be punitive. Here,

---

[71] Administrative Order No. 2004-2, 470 Mich lxiv (2004).

the Counties were already paying the Trial Court's reasonable attorney fees and costs. Therefore, the Trial Court did not incur expenses as a result of the Counties' pursuit of allegedly frivolous claims and defenses.[1] Thus, the award of attorney fees as a sanction was not warranted. I would reverse that portion of the lower court's judgment that found the Counties in breach of contract. I would also vacate the award of attorney fees and costs as a sanction for pursuit of frivolous claims and defenses. In all other respects, I would affirm the judgment of the lower court.

### I. CONTRACT CLAIMS

The majority concludes in part II of its opinion that the Counties breached an express contract with the Trial Court to implement an improved employee retirement plan. I dissent from this decision because the Counties could not enter into a contract with the Trial Court to fund something they had a preexisting duty to fund under statute and the Michigan Constitution.

The duty of the counties to fund the circuit courts is defined by statute. MCL 600.591(1) requires the county board of commissioners in each county to annually appropriate funds for the operation of the circuit court in that county. Administrative Order No. 1998-5 sets forth the details of court budgeting.[2] Not only do

---

[1] For the purpose of addressing this issue, I shall assume without deciding that the claims and defenses pursued by the Counties were frivolous.

[2] Administrative Order No. 1998-5, § II provides, in pertinent part:

A court must submit its proposed and appropriated annual budget and subsequent modifications to the State Court Administrator at the time of submission to or receipt from the local funding unit or units. The budget submitted must be in conformity with a uniform chart of accounts. If the local funding unit

counties have this statutory duty to fund circuit courts, but the judiciary possesses the inherent constitutional power to compel the counties to pay those sums of money that are reasonable and necessary to carry out the courts' mandated responsibilities. *46th Circuit Trial Court v Crawford Co*, 261 Mich App 477, 489; 682 NW2d 519 (2004), citing *Wayne Circuit Judges v Wayne Co*, 386 Mich 1, 8-9; 190 NW2d 228 (1971) (*Wayne II*). This includes the power to fix the salaries of its employees within the budget appropriations. *Employees and Judge of the Second Judicial District Court v Hillsdale Co*, 423 Mich 705, 722; 378 NW2d 744 (1985); *Ottawa Co Controller v Ottawa Probate Judge*, 156 Mich App 594, 603-604; 401 NW2d 869 (1986). The judiciary also has the inherent authority to manage its employees in order to carry out its operations. *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 297; 586 NW2d 894 (1998), vacated in part on other grounds 460 Mich 590 (1999). "[T]he fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch." *Id.* at 299. A court may file a civil action to compel funding "[i]f, after the local funding unit has made its appropriations, a court concludes that the funds provided for its operations by its local funding unit are insufficient to enable the court to properly perform its duties and that legal action is neces-

---

requests that a proposed budget be submitted in line-item detail, the chief judge must comply with the request. . . . A chief judge may not enter into a multiple-year commitment concerning any personnel economic issue unless: (1) the funding unit agrees, or (2) the agreement does not exceed the percentage increase or the duration of a multiple-year contract that the funding unit has negotiated for its employees. [459 Mich clxxvi-clxxvii.]

sary . . . ." Administrative Order No. 1998-5, § III, 459 Mich clxxvii.

Simply put, the Counties were obligated by statute and the Constitution to provide the Trial Court funding adequate to fulfill its function. In fact, the Trial Court asserted its inherent power to order adequate and necessary funding under Administrative Order No. 1998-5. The lower court concluded that funding for the retirement plan was reasonable and necessary for the Trial Court to fulfill its statutorily mandated function. The majority has determined that there is sufficient evidence to support the lower court's finding.[3] "A pledge to undertake a preexisting statutory duty is not supported by adequate consideration." *Gen Aviation, Inc v Capital Region Airport Auth (On Remand)*, 224 Mich App 710, 715; 569 NW2d 883 (1997). Because the Counties had a preexisting duty to appropriate funds for the retirement plan, this duty could not provide adequate consideration for any alleged contractual relationship. *Alar v Mercy Mem Hosp*, 208 Mich App 518, 525; 529 NW2d 318 (1995). Further, the Trial Court could not offer the Counties anything in exchange for the Counties providing funding beyond that required by statute. The funding of the trial courts is not a bargained exchange subject to contract principles, but is a statutory obligation for the funding units and a constitutional right for the courts. Because the alleged con-

---

[3] The lower court's finding that funding for the retirement plan was reasonable and necessary for the Trial Court to function is reviewed for clear error. MCR 2.613(C); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). Clear error exists only where a reviewing court "is left with a definite and firm conviction that a mistake has been made." *Id.* While I have concerns whether the funding of a retirement plan can be necessary to the functioning of a court, I cannot conclude definitively that the lower court erred in making this finding, given the unique circumstances surrounding the merger of courts under the demonstration project imposed upon the Counties.

tract between the Trial Court and the Counties lacked consideration, plaintiff's contract claims must fail.[4]

Additionally, neither the statutes governing appropriations for trial courts nor Administrative Order No. 1998-5 provide that trial courts and their funding units can enter contracts concerning court appropriations. Rather, Administrative Order No. 1998-5 speaks only of contracts between the courts and their employees. Because courts have the authority and responsibility for personnel matters, any contract regarding the salaries or benefits of court employees should be between the court and its employees, not between the court and its funding unit.[5] The funding unit must appropriate sufficient funds to satisfy a contract between the court and

---

[4] Plaintiff alleged alternative counts of breach of contract and contract implied in law (quantum meruit), which it was entitled to do under MCR 2.111(A)(2). *H J Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 573; 595 NW2d 176 (1999). Quantum meruit is an equitable principle. *In re McKim Estate*, 238 Mich App 453, 458; 606 NW2d 30 (1999).

"A contract implied in law is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended. A contract may be implied in law where there is a receipt of a benefit by a defendant from a plaintiff and retention of the benefit is inequitable, absent reasonable compensation. However, this fiction is not applicable where there exists a relationship between the parties that gives rise to the presumption that services were rendered gratuitously." [*Id.* at 457-458, quoting *In re Lewis Estate*, 168 Mich App 70, 74; 423 NW2d 600 (1988) (citations deleted).]

In the present case, there can be no contract implied in law because the Counties did not receive any benefit from the Trial Court. The Counties were statutorily and constitutionally obligated to fund the retirement plan whether or not the Trial Court employees gave up employment benefits in exchange for implementation of the retirement plan.

[5] In *Judicial Attorneys Ass'n, supra* at 299 n 6, our Supreme Court noted:

its employees. If the funding unit considers an agreement between a local judiciary and its employees to be excessive because it appears that the budget reflecting the contract will exceed the total appropriation, the funding unit may file suit to test the reasonableness and necessity of the provisions contained in the agreement. *Livingston Co, supra* at 274; *Stanley v Ferndale*, 115 Mich App 703, 709; 321 NW2d 681 (1982). However, there is no legal authority supporting the pursuit of contract claims between courts and their funding units. Accordingly, I conclude that the contract claims lack legal merit.

## II. SANCTIONS FOR FRIVOLOUS CLAIMS AND DEFENSES

The majority concludes in part VII of its opinion that the lower court properly sanctioned the Counties for raising frivolous fraud claims and defenses. I dissent because the sanction amounts to a duplicative award of attorney fees and costs to the Trial Court.

If a party raises a frivolous claim or defense, the court must award the prevailing party costs and fees incurred by that party in connection with the civil action. MCL 600.2591; MCR 2.625(A)(2). "The amount of costs and fees awarded under this section shall

---

Over the years, some trial court judges have arrived at agreements under which the trial courts have allowed their funding units to negotiate on their behalf directly with court employees. In those jurisdictions, typically, the terms and conditions of the court employees vary little if at all from those of the funding unit employees. In contrast, in many jurisdictions the funding units have not desired to play any role concerning the terms and conditions of trial court employment. And in a few jurisdictions, from time to time, courts and their funding units have found themselves at loggerheads over employment issues. It is this category that our case law concerning separation of powers and court employment arises.

include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees." MCL 600.2591(2). Thus, assuming that the Counties' fraud claims and defenses were frivolous, the lower court had the duty to award the Trial Court reasonable attorney fees and costs. *In re Attorney Fees and Costs*, 233 Mich App 694, 705; 593 NW2d 589 (1999).

As recognized by the majority in part IV of its opinion, this Court concluded in *Crawford Co, supra* at 490-491, that, under the Trial Court's inherent powers, it was entitled to recoup reasonable attorney fees and costs it incurred in litigating all its claims. The majority in the present case holds that the Trial Court is also entitled to attorney fees and costs under MCL 600.2591 for raising frivolous claims and defenses, thus effectively giving the Trial Court a duplicate recovery of attorney fees and costs.

In *McAuley v Gen Motors Corp*, 457 Mich 513, 525; 578 NW2d 282 (1998), repudiated in part on other grounds by *Rafferty v Markovitz*, 461 Mich 265, 273 n 6 (1999), our Supreme Court held that the plaintiff was not entitled to recover duplicative attorney fees under the mediation rule because he already had been fully reimbursed for his reasonable attorney fees under statute. In so holding, the Court explained that only compensatory damages generally are available in Michigan, and that punitive sanctions may not be imposed. *Id.* at 519-520.[6] "Because the purpose of compensatory damages is to make the injured party whole for the losses

---

[6] As the Court observed, there are "statutory exceptions to this general rule that specifically provide for punitive damages, e.g., MCL 15.240(7) . . . , MCL 600.2911(2)(b) . . . , MCL 750.539h(c) . . . ." *McAuley, supra* at 520 n 8.

actually suffered, the amount of recovery for such damages is inherently limited by the amount of loss; the party may not make a profit or obtain more than one recovery." *Id.* at 520. If a party has already been fully reimbursed for reasonable attorney fees and costs, there are no "actual costs" remaining to be reimbursed. *Id.* at 520-521. However, if a party has been awarded something less than a reasonable attorney fee and there are actual costs remaining, an additional award may be appropriate in some cases. *Id.* at 521.[7]

Here, the Trial Court was awarded reasonable attorney fees and costs under the inherent power doctrine. MCR 2.625(A)(2) and MCL 600.2591 also provide for an award of court costs and reasonable attorney fees. But there is no indication in MCR 2.625(A)(2) or MCL 600.2591 that a double recovery would be appropriate. Further, the purposes of the statute, the court rule, or the Michigan Constitution would not be served by giving a court double recovery at the expense of its funding unit—a sum that would ultimately punish the taxpayers and result in the court recovering money that is not necessary for its functioning.

Because the Trial Court was already reimbursed for reasonable attorney fees and costs, I conclude that it is not entitled to a double recovery of these costs. *McAuley, supra* at 522-524.

---

[7] In *McAuley, supra* at 522, our Supreme Court stated in obiter dicta that there are situations in which independent policies and purposes may serve to allow a party double recovery. But in *Rafferty v Markovitz, supra* at 273 n 6, the Supreme Court repudiated "the dicta in *McAuley* that left open the possibility of recovering attorney fees under both a court rule and a statute where each attorney-fee provision serves an independent purpose."